MAGNUS WEBER v. FREEMAN P. KIRKENDALL ET AL.

FILED FEBRUARY 6, 1894.   No. 5050.

39   193
39   199
39   193
s44   767

**Involuntary Payment:** RECOVERY: INTIMIDATION AND FRAUD. Thursie, Anderson & Flodman owned a shoe store and became indebted to defendants in error in the sum of $840.70, to secure which they held the individual note and mortgage of Thursie. This firm sold out to Johnson & Flodman, and it in turn sold to Flodman & Bruce, and this last firm also became indebted to defendants in error in the sum of $820.71, and while so indebted sold out to plaintiff in error, who assumed their debt. Thursie and his attorney and the defendants in error and their attorney induced plaintiff in error to come to their place of business, when they took him to a room, not their office, on the fifth floor of their business house, and there falsely claimed that he was liable to them for the old debt of Thursie, Anderson & Flodman, and demanded that he pay it then and there, and by their acts and expressions led the plaintiff in error to believe that if he did not pay them the claim demanded, they would attach his shoe store; and, influenced by such fears, plaintiff in error paid defendants in error the debt owing them by Thursie, Anderson

17

& Flodman. *Held*, That the payment, while not technically made under duress of property, was without consideration, was extorted from plaintiff in error by intimidation and fraud, was not voluntarily made, and might be recovered back.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J.

The facts are stated in the opinion.

*Charles W. Haller*, for plaintiff in error:

Although the facts may not be such as to make this a case of technical duress, it amounts to undue influence, and the plaintiff should recover. (*Spaids v. Barrett*, 57 Ill., 289; *Dykes v. Wyman*, 34 N. W. Rep. [Mich.], 561; *Lafayette & I. R. Co. v. Pattison*, 41 Ind., 312; *Collins v. Westbury*, 2 Bay [S. Car.], 211; *Chandler v. Sanger*, 114 Mass., 364; *Sartwell v. Horton*, 28 Vt., 370; *Munson v. Carter*, 19 Neb., 293; *McLin v. Marshall*, 1 Heisk. [Tenn.], 678.)

*Montgomery, Charlton & Hall*, contra, cited: *Wolfe v. Marshal*, 52 Mo., 167; *McClair v. Wilson*, 31 Pac. Rep. [Col.], 502; *Murphy v. Creighton*, 45 Ia., 179; *Peckham v. Hendren*, 76 Ind., 47; *Hilborn v. Bucknam*, 78 Me., 482; *Mundy v. Whittemore*, 15 Neb., 651; *Sieber v. Weiden*, 17 Neb., 583; *King v. Williams*, 21 N. W. Rep. [Ia.], 502; *Higgins v. Brown*, 78 Me., 473.

RAGAN, C.

Magnus Weber, on the 3d day of October, 1888, purchased of Flodman & Bruce a retail shoe store in the city of Omaha, and assumed an indebtedness of $820.71 which his vendors then owed Kirkendall, Jones & Co. Flodman & Bruce had purchased this store of Johnson & Flodman, and they purchased the store of Thursie, Anderson & Flodman. While the latter firm owned the store it became indebted to Kirkendall, Jones & Co., and

$848.70 of said debt remained unpaid at the time Weber became the owner of the store.    This latter amount, Weber did not assume by the purchase he made of Flodman & Bruce.   On the 8th day of October, 1888, Kirkendall, Jones & Co. induced Weber to come to their place of business, and on reaching there he was taken to a room, not their office, on the fifth floor of their business house, where were one of the firm of Kirkendall, Jones & Co. and their attorney, and Mr. Thursie and his attorney.   At this time and place Kirkendall, Jones & Co. and their attorney falsely claimed to Weber that he was liable to them for the $848.70, the debt owing them by the old firm of Thursie, Anderson & Flodman, and demanded that he pay the same, which Weber then did by assigning to them a certificate of deposit of an Omaha bank, which certificate was then owned by him.   Weber then brought this suit against Kirkendall, Jones & Co. to recover the money represented by said certificate of deposit, alleging that he had surrendered it involuntarily to Kirkendall, Jones & Co. while unlawfully restrained of his liberty by them, and in fear of threats made by them if he did not pay Thursie, Anderson & Flodman's debt, that they Kirkendall, Jones & Co. would seize, by attachment, his shoe store.   The case was tried to the court, a jury being waived.   The court made certain special findings and found generally for Kirkendall, Jones & Co., and Weber brings the case here on error.

The special findings made by the court, material here, are as follows: That Kirkendall, Jones & Co. made no direct threat to attach Weber's store, but by their acts and expressions they led him to believe that they would attach his stock of goods if he did not pay the $848.70 claimed; that Weber would not have paid this claim had he not believed from the acts and statements made by Kirkendall, Jones & Co. that they intended to attach his shoe store if he did not pay it; that the money paid by Weber was not

for a debt he owed Kirkendall, Jones & Co., but was the debt of another. These special findings of the district court, and the evidence in the record, establish this: That Kirkendall, Jones & Co. knew that Weber was not legally liable for the claim which they induced him to pay, and that Weber made this payment because he feared that if he did not make it that Kirkendall, Jones & Co. would attach his shoe store and ruin his business, and that this fear was fixed in Weber's mind by the acts and statements of Kirkendall, Jones & Co., and their attorney, at the conference above referred to. The precise question then is, was this payment made by Weber voluntarily? In this case the honesty of Weber's claim is not denied. It is defended against here by the defendants in error on technical grounds throughout; the principal ground of defense being that the payment was voluntarily made. It is undoubtedly a general rule that money paid voluntarily, without fraud and with a full knowledge of all the facts, cannot be recovered back by the party who has so paid it. There are, however, many exceptions to this rule, or rather instances in which the payments, having been made under a pressure of an enforced emergency, are not considered voluntary but compulsory in law. (*Cobb v. Charter*, 32 Conn., 358.) In that case the defendant had possession of a chest of tools belonging to the plaintiff, who was a mechanic, and refused to give up the chest unless plaintiff would pay a bill for board which defendant had against the plaintiff's son and for which the plaintiff was in no manner liable. To get possession of his chest of tools, Cobb paid the board bill, and the court held that it was not voluntarily paid and that it might be recovered back.

In *Chandler v. Sanger*, 114 Mass., 364, it is said: "A payment by a person to free his goods from an attachment, put on for the purpose of extorting money by one who knows that he has no cause of action, is a payment under duress, and the money paid can be recovered back."

In *Vyne v. Glenn*, 41 Mich., 112, the defendant compelled plaintiff to make a settlement with him and to forgive certain moneys which the defendant lawfully owed the plaintiff, by informing the plaintiff that he had stopped payments of certain moneys due the plaintiff from third persons, knowing at the time that if plaintiff failed to get these moneys owing him, he would be financially embarrassed or perhaps ruined. It was held that the settlement made was obtained by duress and would be set aside and the defendant compelled to pay the moneys to plaintiff which the plaintiff had forgiven him in the settlement made.

In *Spaids v. Barrett*, 57 Ill., 289, goods were wrongfully taken from the owner thereof by means of a writ of attachment fraudulently obtained, and the party in possession refused to surrender the goods on payment of the sum actually due, but demanded more than twice that amount, as a condition of his releasing the attachment and surrendering possession of the goods. The owner paid the sum demanded, and the court held that it was not voluntarily paid and might be recovered back.

In *Adams v. Schiffer*, 11 Col., 15, Adams agreed to convey to Schiffer an interest in certain mining property by a deed passing a good title. In pursuance of this agreement he gave Schiffer a quitclaim deed, which he accepted. A third party made an unfounded claim to the property, which Schiffer bought up. At the time Adams was a depositor in Schiffer's bank, and Schiffer compelled him, by refusing to pay his checks, to settle for part of the sum paid by Schiffer to such third party. The court held that such a payment was involuntary.

These authorities establish the rule that an illegal payment made by one in order to obtain his property from another who has possession of it, and refuses to surrender it unless such payment is made, is not a voluntary payment and may be recovered back. Counsel for defendants in error admit the correctness of this rule, but say, however,

that it is not applicable to the facts in the case at bar, since defendants in error did not, at the time they compelled Weber to make the payment to them of the debt owing them by Thursie, Anderson & Flodman, have possession of Weber's store; but we cannot appreciate this distinction. What is the difference in principle whether defendants in error unjustly compelled the plaintiff in error to pay a debt which he did not owe them by fixing and inducing in his mind the reasonable fear that if he did not pay it they would attach his store, and going in the first instance and attaching his goods and then refusing to release them unless he would make the payment demanded? Either method of obtaining this money was equally unlawful. It must be borne in mind that this record shows that this claim made by defendants in error on the plaintiff in error was illegal and unjust, and unfounded, and defendants in error knew that. It was an old debt of Thursie, Anderson & Flodman's, and defendants in error, at the time they compelled the plaintiff in error to pay it, had the individual note and mortgage of Thursie to secure this debt. Nowhere is there any pretense or claim made that the sale from Thursie, Anderson & Flodman to Johnson & Flodman, or the sale from Johnson & Flodman to Flodman & Bruce, or the sale from Flodman & Bruce to Weber was fraudulent. When Weber bought this store of Flodman & Bruce he assumed a debt of some eight hundred dollars which that firm owed the defendants in error, and called on them and told them he had bought the store and made a payment upon the debt. Counsel for defendants in error say that no precedent can be found allowing money to be recovered back which has been paid because the party paying it feared that if he did not, the party who demanded the payment would seize his property by legal process. I have no doubt that when the first case arose to recover money back which had been extorted from the owner by one in possession of his property, in order to in-

duce such extortioner to release possession of the property, that counsel who defended in the case made the argument that no precedent could be found allowing such payment to be recovered back, and that it was a voluntary payment, and that in order to entitle such party to recover, he must show that he made the payment by reason of fear of loss of life or irreparable injury to his person. But it seems that the court was equal to the emergency and made a precedent, and from this time forth a precedent will be found in the case of *Weber v. Kirkendall,* 39 Neb., 193, allowing money to be recovered back which a party has paid by reason of fears that if he did not pay it the party who made the demand would attach his goods.

To do anything voluntarily means to do it with one's free will and without fear or compulsion of mind or body. The court will not shut its eyes to the every-day transactions of life. Here was a young man in business. A demand is made upon him that he pay some eight hundred dollars that another owes. He protests that he does not owe it. He asks that he be given time to consider the matter and consult his friends. He is told by defendants in error that he must not leave the building until this matter is settled; that it must be settled here and now. We are now asked to say that he paid this money voluntarily because he did not resist the illegal and unjust demands of defendants in error and allow them to attach his store. But what did the attaching of plaintiff's store mean to him? If he had other creditors it would have alarmed them; it would have closed his place of business; it would stop his trade; it would probably financially ruin him, and it would destroy his financial credit and reputation,—something more valuable to a business man than money itself. If he weighed and considered these matters he would have very reasonably concluded that from a financial standpoint it was not so bad for him to submit to the unjust demand of the defendants in error as to have his business ruined.

It is said by counsel for defendants in error that he should have refused their demand and allowed them to attach his store, then resisted the attachment in the courts, or sued them for a wrongful attachment of his property. But this is a two-edged sword, and the answer to this argument is that the defendants in error, having illegally determined to compel this plaintiff in error to pay them the debt which he did not owe, might, at least, have had consideration enough for plaintiff in error to, in the first instance, bring their attachment suit against the property to establish their unfounded claim. By doing so they would at least have left the plaintiff in error in the possession of his money with which to have resisted the collection of their unfounded claim. But this record discloses not only that defendants in error have in their possession money unlawfully demanded and unlawfully obtained from plaintiff in error, but the conference held in the business house of defendants in error, and the parties at that conference, are not without significance. Why should Mr. Thursie and Mr. Thursie's attorney be there? Was this a conspiracy between Thursie and the defendants in error to compel the plaintiff in error to pay Thursie's debt to them? We do not say that it was, but it looks very like it. This money which defendants in error have extorted from plaintiff in error may not have been obtained by duress of property, technically speaking, but it was obtain.d from him involuntarily. It was obtained by a species of intimidation, fraud, and compulsion, and no court of equity will permit them to retain it. If this had been a debt which plaintiff in error owed them, then, had he paid it under the fear that if he did not his goods would have been attached, the case would be entirely different. But the controlling facts in this case are that it was not his debt, and that it was not voluntarily paid.

The decree of the district court is reversed and a judgment will be rendered in this court in favor of the plaintiff

in error against the defendants in error for the sum of $765.25, with seven per cent interest thereon from the 9th day of November, 1888, and costs of suit.

JUDGMENT ACCORDINGLY.