JOHN STEEN, APPELLEE, v. THOMAS STRETCH ET AL., APPELLANTS.

FILED FEBRUARY 3, 1897. No. 7043.

1. **Usury.** A was indebted to B in a certain sum and to C in a further sum. The contract with C was usurious. A obtained a larger loan from B and from its proceeds discharged both debts. C acted as the agent of B in examining the title and drawing the instruments, and in paying the money; but C's debt was entirely separate from B's, and B was not aware that the additional money borrowed from him was to be used in satisfying C's usurious loan. *Held,* That the last transaction was not tainted by the usury inherent in the debt to C.

2. ———: BANK DISCOUNT. Under our statute any rate of interest agreed upon not exceeding ten per cent per annum is valid, and interest, if the parties so agree, may be taken yearly or for any shorter period, or in advance. *Held,* That under this statute it is not usurious to compute the interest according to the process known as "bank discount;" that is, to deduct interest at the rate

of ten per cent, if that rate be agreed upon, calculated on the face of the note or other evidence of indebtedness, and to pay the borrower the difference.

3. **Mortgages:** CONSIDERATION. A mortgage given to secure the guarantor of the mortgagor's note is not void for want of consideration, although given after the debt accrued without new consideration, and given before the surety paid the debt.

4. ——: ——: CONSTRUCTIVE NOTICE. A mortgage was executed to A for the purpose of indemnifying him against loss on a note of the mortgagor, the payment of which he had guarantied. The mortgage on its face was conditioned absolutely to pay the note referred to, and did not disclose the relation of the parties as principal and surety. *Held,* That a subsequent incumbrancer was charged with notice by the record of A's mortgage, and was not entitled to priority because it did not truly state its conditions.

APPEAL from the district court of Saunders county. Heard below before WHEELER, J.   *Reversed in part.*

*M. B. Reese,* for appellant Sanford.

*Simpson & Sornborger,* for appellants May and Stretch.

*E. F. Gray* and *D. B. Carey,* for appellee Steen.

*O. C. Tarpenning* and *Guttery & Silver,* for other appellees.

IRVINE, C.

Steen instituted this action for the purpose of foreclosing a mortgage executed by Thomas Stretch and wife on land in Saunders county. A number of persons were made defendants and a decree was rendered establishing the several amounts and relative priority of the various liens and awarding foreclosure. There is no controversy as to some of these liens and it is unnecessary, therefore, to state their nature or the facts relating thereto. Of the contested liens priority was awarded that of Whitfield Sanford. He claimed under a mortgage to secure a note of $3,800 executed by Stretch. Stretch urged in defense that the transaction was usurious. The court so found and awarded Sanford merely the amount by

him advanced, without interest. From this part of the
decree Sanford appeals. The next lien was awarded the
plaintiff Steen, on the mortgage first referred to. The
following was awarded James C. May on a later mort-
gage. Stretch defended against Steen's mortgage on the
ground that it was without consideration. Stretch ap-
peals from that part of the decree awarding Steen a lien.
May also appeals from this part of the decree, claiming
that the court erred in giving the Steen mortgage priority
over his. We shall treat these three appeals in their
order.

There is no substantial conflict in the evidence. The
facts surrounding the Sanford claim are, in brief, as fol-
lows: Sanford held two notes of Stretch, one for $1,500,
the other for $1,100. Both notes bore interest at the rate
of ten per cent per annum. The interest on the $1,100
note was made payable in advance and was represented
by coupons. Stretch was also indebted to C. W. Sanford,
the son of Whitfield Sanford, on two notes, one for $313
the other for $418. Both of these notes were usurious.
C. W. Sanford in many matters acted as agent for Whit-
field Sanford, his father, but the evidence is uncontra-
dicted that with regard to Stretch their transactions
were entirely separate, although a portion of Stretch's
business with Whitfield Sanford was transacted through
C. W. Sanford's agency. Stretch applied for a further
loan. Whitfield Sanford inspected the property, and
finding it in his opinion to afford sufficient security,
agreed to make a loan of $3,800 thereon, the two notes
which he already held to be paid from the loan. He di-
rected C. W. Sanford to make the necessary examination
and draw the papers. Accordingly the $3,800 note and
mortgage were drawn by C. W. Sanford and executed
by Stretch. The note was made for five years, bearing
ten per cent interest per annum. One year's interest was
deducted at the time of making the note, and four coupon
notes were executed payable in one, two, three, and four
years respectively, each for $380, and each providing that

if not paid at maturity it should itself draw interest at ten per cent from maturity. At that time there was due on the two notes already held by Whitfield Sanford, $2,763.40. C. W. Sanford made a charge against Stretch of $6 for making and examining an abstract of title and drawing the instruments. He surrendered the two Whitfield Sanford notes which were in his possession for collection and applied the remainder of the $3,800 by agreement with Stretch upon the notes held by C. W. Sanford. The account was made up as follows:

| | | |
|---|---:|---:|
| Due Whitfield Sanford on his two notes | $2,763 | 40 |
| One year's interest thereon | 380 | 00 |
| Paid C. W. Sanford for abstract, etc. | 6 | 00 |
| Paid C. W. Sanford on $313.00 note | 352 | 80 |
| Paid C. W. Sanford on $418.00 note | 297 | 80 |
| Total | $3,800 | 00 |

There is evidence tending to show that in the computation of the sum due on the $1,100 note interest was computed on delinquent interest, and, as already stated, the coupons attached to the $3,800 note on their face provide for the payment of interest after maturity. This transaction Stretch claims, and the district court held, was usurious. It would seem at first that this claim would be best supported by the fact that interest had been reserved on delinquent interest already computed at the highest rate permitted by law. It seems to be the doctrine of this court that interest may not be reserved upon delinquent interest where the amount would thereby be greater than simple interest at the highest legal rate. But while the court will not allow such compounding of interest, it does not render the transaction usurious. (*Hager v. Blake*, 16 Neb., 12; *Mathews v. Toogood*, 23 Neb., 536, 25 Neb., 99; *Richardson v. Campbell*, 27 Neb., 644, 34 Neb., 181; *Rose v. Munford*, 36 Neb., 148.) Indeed, we understand counsel for Stretch to concede this point. They state in their brief that they do not contend, first, that an agreement to take ten per cent annu-

ally in advance is usurious; or, second, an agreement to pay interest on overdue interest; or, third, to pay the lender reasonably for abstracting and drawing papers; or, fourth, an agreement to pay interest on interest after maturity.

The brief abounds in mathematics and subtle reasoning; but we gather that Stretch's contention is twofold: First, that C. W. Sanford being the agent of Whitfield Sanford, the $3,800 note was in effect a renewal of the two notes of C. W. Sanford, and that these being usurious, the whole transaction was tainted; and, second, that while the statute permits taking interest in advance, such interest must be computed on the amount actually paid over to the borrower and not by making a note which by deducting from its face one year's interest on the face thereof, yields the borrower, presently, the amount desired.

As to the first argument we do not think it is borne out by the record. While C. W. Sanford, in many matters, and to a certain extent in this, acted as the agent of his father, Whitfield Sanford, it still appears, by the undisputed evidence, that the two notes to C. W. Sanford, which are conceded to have been usurious, were his own property. They represented a debt from Stretch to him and not to his father. They were paid and discharged out of the proceeds of the loan, the elder Sanford not even knowing how the surplus after discharging his own notes was used. It is inferable from the testimony that no money was actually paid to Stretch; that C. W. Sanford kept a separate bank account embracing his transactions with his father, and drew checks thereon; that he kept a running account of transactions between his father and himself, and that the payment to him was by way of an exchange of credits on this account. The fact remains, however, that Stretch obtained the benefit of this money; that Whitfield Sanford became in no manner a party to the usurious loans, and that the transaction was not essentially different from what it would

have been had Whitfield Sanford or a stranger lent Stretch money, paying it over to him and taking his note, and Stretch had, with that money, paid outstanding notes usurious in their character. Such a transaction would not taint the new loan with usury.

The second argument resolves itself to this: Where interest is reserved at ten per cent, is it lawful to compute that interest on the amount to be paid at maturity, deduct the interest so computed from that amount, and pay the borrower the difference? In other words, does our statute forbid what is known as "bank discount?" The statute is as follows: "Any rate of interest which may be agreed upon, not exceeding ten dollars per year upon one hundred dollars, shall be valid upon any loan or forbearance of money, goods, or things in action; which rate of interest so agreed upon, may be taken yearly or for any shorter period, or in advance, if so expressly agreed. (Compiled Statutes, ch. 44, sec. 1.) This statute was adopted in 1879. By the established custom of bankers existing when the statute was adopted, and emphatically impressed on the mind of every schoolboy in his arithmetic under the title of "bank discount," a loan of $100 for one year meant the making of a note payable in one year without interest, the deducting of one year's interest at the rate agreed from $100, and the payment of the difference to the borrower. The statute was passed undoubtedly with a view to that custom, and we think that the provision permitting the taking of interest in advance had reference thereto. The statute, therefore, did not invalidate such a transaction as we have before us. We can find no evidence, therefore, tending to support the plea of usury in the Sanford mortgage, and the decree must in that respect be reversed.

We next direct our attention to the appeal of Stretch against the decree on behalf of Steen. The pleadings allege, and the evidence shows, that Stretch had executed a note to Steen for $1,005, due in January, 1889. Soon after the execution of this note Steen sold it to

41

Lyle & Collins, guarantying payment. It was not paid at maturity, and thereafter Stretch and wife executed a mortgage to Steen to secure the note, on Steen's agreement, as averred in his cross-petition, to forbear proceedings for six months, and, as disclosed by the evidence, to forbear "until next fall." Thereafter judgment was recovered on the note against both Stretch and Steen. Steen paid the judgment and thereafter · brought this action. Stretch contends that the mortgage so executed was without consideration, chiefly on the ground that Steen had no power to prevent proceedings against the maker, and that his agreement to extend the time of payment "until fall" was too indefinite for enforcement. We need not inquire very closely into these questions. While Steen was not at the time the mortgage was executed the holder of the note, he was obligated for its payment. As between him and the maker, he occupied the position of a surety. We have never heard that a mortgage executed for the indemnification of a surety was without consideration; nor do we think that a new consideration is necessary to support a conveyance made to secure the payment of an existing debt. Questions may arise, and have arisen, as to the effect of such conveyances, between the grantee and other creditors or holders of intervening equities; but these are questions which do not go to the validity of the transaction as between the parties. Every assignment for the benefit of creditors is a conveyance of this character. A large proportion of the mortgages in fact executed have been executed solely to secure pre-existing debts. We are cited in support of this appeal to the case of *Kansas Mfg. Co. v. Gandy*, 11 Neb., 448. In that case it was held that a mortgage executed by a married woman on her separate estate to secure the pre-existing debt of her husband, was without consideration. While the language of the opinion is somewhat general, it is quite clear that the fact that the mortgage was by a stranger to the debt was the controlling consideration, and this seems to have been the interpretation placed on

the case in *Barnes v. Van Keuren*, 31 Neb., 165.   On the.
other hand, our reports are so full of cases supporting
mortgages whose sole purpose was the securing of a pre-
existing debt, that it would be tedious and supereroga-
tory to cite them.

The appellant May contends that even if the Steen
mortgage be good as between the parties, it should be
subordinated to his mortgage, which is later in time.   In
addition to the arguments against the Steen mortgage
advanced by Stretch, May argues that the consideration
of this mortgage was not truly expressed, and that for
that reason its record did not charge him with notice of
its nature.   The condition of the Steen mortgage, as ex-
pressed, is the payment of the note for $1,005.   The mort-
gage does not recite that the note had been transferred
and that Steen's obligation was then that of a guarantor
only.   But the distinction is not substantial.   The true
condition was the indemnification of Steen.   The lia-
bility could not be greater than that expressed in the
mortgage.   It turned out to be the same.   It might have
been less; but this would have operated in May's favor.
There was no misrecital in the mortgage which made it
appear as a less formidable incumbrance than it really
was, and May could not have been misled to his disad-
vantage.   Indeed, he does not claim that he was so mis-
led in fact.   No estoppel *in pais* was either pleaded or
proved.   There was no estoppel by deed in favor of May,
and to hold the record of an instrument not in all respect
accurately describing the real contract of the parties to
be invalid and not to charge subsequent purchasers with
notice, would be as disastrous in its consequences as it
is unfounded in reason.   It would displace all deeds
where the exact consideration is not recited.   It would
displace every absolute deed by way of mortgage.

The decree is reversed as to Sanford and the cause
remanded with instructions to take an account of the
amount due him on the basis of a legal contract, not al-

lowing, however, interest on delinquent interest install-
ments.   In other respects the decree is affirmed.

JUDGMENT ACCORDINGLY.