### JULES ALTHAUS V. STATE OF NEBRASKA.

FILED MARCH 4, 1916.   No. 19411.

1. **Constitutional Law: BROKERS: INTEREST.** The act fixing the maximum rate of interest at 10 per cent. per annum, providing for the issuance of a license, and authorizing licensed money-lenders to charge a brokerage fee not exceeding one-tenth of the money actually lent and, in exceptional cases, an examination fee of 50 cents, in addition to interest, is not unconstitutional as being a "local or special law * * * regulating the interest on money," nor as denying "the equal protection of the laws." Laws 1915, ch. 204.

2. ——: ——: VALIDITY OF STATUTE. The act conferring upon the secretary of state, after a hearing, power to reject an application for a license to lend money is not unconstitutional as conferring upon that officer arbitrary power. Laws 1915, ch. 204, sec. 3.

ERROR to the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Smyth, Smith & Schall,* for plaintiff in error.

*Willis E. Reed, Attorney General,* and *C. S. Roe, contra.*

*J. P. Palmer, amicus curiæ.*

ROSE, J.

In a prosecution by the state in the district court for Douglas county, Jules Althaus was convicted of violating a statute fixing the maximum rate of interest at 10 per cent. per annum, providing for the issuance of a license, and authorizing licensed money-lenders to charge a brokerage fee not exceeding one-tenth of the money actually lent and, in exceptional cases, an examination fee of 50 cents, in addition to interest. Laws 1915, ch. 204. For that offense defendant was sentenced to pay a fine of $25. As plaintiff in error he now presents for review the record of his conviction.

Defendant challenges the constitutionality of the act under which he was prosecuted. In substance, the statute provides that it shall be unlawful to make a loan of money at a rate of interest in excess of 10 per cent. per annum, but empowers the secretary of state to issue to an applicant who pays an annual fee of $60 and executes a bond for $2,000 signed by a duly approved surety company a license authorizing the licensee to charge, in addition to interest, a brokerage fee equal to one-tenth of the amount of money actually lent and, in cases where the loan does not exceed $50 and is not secured by personal property, an examination fee of 50 cents. Laws 1915, ch. 204.

Defendant's principal objections to the act are that it violates section 15, art. III of the Constitution, prohibiting local and special laws regulating the interest on money, and creates an unreasonable and arbitrary class of money-lenders who are permitted to exact the equivalent of 20 per cent. interest per annum. The power of the legislature to regulate interest cannot be questioned. *State v. Carey,* 126 Wis. 135, 11 L. R. A. n. s. 174. Legislation like that under consideration is within the police power of the state. *Griffith v. State of Connecticut,* 218 U. S. 563. The evils against which the law is directed had become a public scandal. The rapacity of money-lenders who impounded chattels and wages to secure small loans to those in pecuniary distress had become intolerable. Persons engaged in that business were practically uncontrolled. Many of their operations were secret, but the iniquity of their compensation for the use of money created a demand for the restraints of police power. The act in controversy not only puts a limit on exactions for the use of money, but provides punishment for the violation of its provisions and opens to official scrutiny the transactions of all who are authorized to charge limited fees in addition to interest at the rate of 10 per cent. per annum. The law assailed regulates the interest chargeable by two classes—unlicensed lenders of money limited to 10 per cent. per annum,

and licensed lenders authorized to make an additional charge, called a "brokerage fee," not exceeding one-tenth of the money actually lent and, in exceptional cases, to charge an examination fee of 50 cents. The latter class is open to all who comply with the terms of the statute. One class of borrowers may be required to pay more for their loans than others, but this condition already existed and was not created by legislation. The lawmakers recognized a class of borrowers from whom exorbitant rates of interest had been exacted under existing conditions and attempted to afford them some measure of protection. Those making such loans are required to obtain a license. Their methods of doing business are regulated. The act makes no discrimination against any class of borrowers. It is not unconstitutional as being a "local or special law * * * regulating the interest on money." The better rule is that the classification is neither unreasonable nor arbitrary. It is also clear that the act does not deny the equal protection of the laws. *Reagan v. District of Columbia,* 41 App. D. C. 409; *Griffith v. State of Connecticut,* 218 U. S. 563.

Defendant relies upon *Commonwealth v. Young,* 248 Pa. St. 458. It must be conceded that the opinion in that case is not in harmony with the views herein expressed. The philosophy of the legislation, the police power under which it was enacted, proper classification in regulating the interest on money, and existing conditions calling for a remedy do not seem to have been recognized by the Pennsylvania court.

Defendant further insists that the act is void because a section thereof requires the applicant to furnish a bond executed by a surety company. Laws 1915, ch. 204, sec. 4. The determination of this question is not necessary to a decision, for the reason that a ruling thereon in favor of defendant would not affect the validity of the act as a whole or result in an acquittal.

It is further argued that the act is unconstitutional because it confers upon the secretary of state arbitrary

power to reject applications for licenses without providing a method for reviewing his acts. There is no attempt to vest an arbitrary authority in the secretary of state. Adequate remedies exist for the protection of any legal rights infringed by the unwarranted rejection of an application for a license.

Invalidity of the act has not been shown. The judgment is therefore

AFFIRMED.

SEDGWICK, J., not sitting.

HAMER, J., dissenting;

The act under consideration in this case should be entitled an act to license usurers and their assistants to live off the poor. This act is claimed to have been provided especially for the benefit of the unfortunate. The first section contains a proviso that the person who contemplates the loaning of money at the illegal rate specified and under the conditions provided shall be entitled to a license from the secretary of state to engage in his peculiar business. He is guaranteed a protection that other money-lenders do not enjoy. He is exempt from the operation of the usury law if he has a license. To get a license he has to pay the secretary of state $60 per annum. He must also give a bond in the sum of $2,000 conditioned for the faithful performance of his duties as licensee, and the prompt payment of any judgment which may be recovered against him. Deputy inspectors shall be appointed in each county in the state and they are to inspect the books and records of these licensed money-lenders. The inspectors shall receive for their services $5 a day to be paid by the person or corporation that borrows the money. While this act purports to have been passed for the benefit of the unfortunate who are poor, it enables the collection of oppressive rates from those who are probably distressed. I do not question the good intent of the legislators who · passed the act upon the theory that they were helping somebody, but I doubt its efficiency, and I think it is

clearly unconstitutional. It discriminates between bor-
rowers, and compels those who are least able to pay, to
pay the highest rates. It also places the licensee beyond
attack. The opinion of the majority should declare the
act unconstitutional and void. That would give an oppor-
tunity for a new act to be passed in which the poor become
actual beneficiaries.