ROGER L. ROBB ET AL., APPELLEES, V. CENTRAL CREDIT CORPORATION, A CORPORATION, ET AL., APPELLANTS.

100 N. W. 2d 57

Filed December 24, 1959. No. 34653.

*Marti, O'Gara, Dalton & Sheldon, Bernard L. Packett,* and *Robert P. Miller,* for appellants.

*Ewald D. Warnsholz,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Lancaster County. It involves an action brought by Roger L. Robb and Ardys L. Robb against Central Credit Corporation, A. C. Nelsen Company of Lincoln, A. C. Nelsen Auto Sales, Inc., and First National Bank of Omaha. The purpose of the action is to have declared null and void a certain note dated February 8, 1956, given by the plaintiffs to defendant A. C. Nelsen Company of Lincoln in the sum of $1,656.29 in connection with the purchase of an automobile because, it is claimed, it represents a loan and its terms violate certain provisions of the Nebraska Installment Loan Act. Plaintiffs also seek to recover from the defendants all of the money they paid to them under and pursuant to the provisions thereof.

The trial court found generally for the plaintiffs and granted them the relief they had prayed for, holding the note to be void and uncollectible and rendering a judgment against the defendants, or some of them, for all the money plaintiffs had paid to them under and pursuant to the note held void. Defendants filed a motion for new trial, which was overruled, and they have perfected this appeal therefrom.

Appellees are husband and wife, having been married on September 10, 1955. At all times herein material

appellee Roger L. Robb was a student in the University of Nebraska from which he was graduated on August 2, 1957. They lived in Lincoln until shortly after his graduation when they moved to Mountain View, California, where they apparently now reside.

Appellant Central Credit Corporation is a Nebraska corporation with its place of business located at 2112 Harney Street in Omaha, Nebraska. At all times herein material it was licensed by the State of Nebraska to engage in the installment loan business. We shall herein refer to it as Central Credit. Appellant A. C. Nelsen Auto Sales, Inc., is a Nebraska corporation engaged in the . business of selling automobiles with its place of business located at 2112 Harney Street in Omaha, Nebraska. We shall herein refer to it as Nelsens of Omaha. Appellant A. C. Nelsen Company of Lincoln is a Nebraska corporation engaged in the business of selling automobiles with its place of business located at 245 O Street in Lincoln, Nebraska. We shall herein refer to it as Nelsens of Lincoln. Appellant First National Bank of Omaha is a bank existing under the laws of the United States and is engaged in general banking with its place of business located at Sixteenth and Farnam Streets in the City of Omaha. We shall herein refer to it as the bank.

Nelsens of Lincoln, Nelsens of Omaha, and Central Credit are corporations which, for all practical purposes, have the same officers and stockholders and are managed by these officers. A. C. Nelsen was, at all times herein material, the president of all three and the principal stockholder therein. Joseph J. Sharp, to whom we shall refer as Sharp, was, during that time, vice president of all three and although employed by Nelsen of Omaha in its Omaha office as credit manager he had authority to bind not only Nelsens of Omaha but Nelsens of Lincoln and Central Credit in the sale and financing of such sales.

The burden of proof to show the nature of the trans-

action out of which the note in suit had its origin was on the appellees, since they claim the note given by them on February 8, 1956, to Nelsens of Lincoln was a loan and not a time sale. See, State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1; Kucaba v. Kucaba, 146 Neb. 116, 18 N. W. 2d 645.

There is really no dispute as to just how the transaction herein involved was handled. On September 11, 1955, appellees had purchased from Nelsens of Lincoln a 1950 Safeway housetrailer and, at that time, executed to it a note in the sum of $1,186.20 in payment thereof and a chattel mortgage on the trailer as security therefor. This note was payable in 30 installments of $39.54 each, the first being due on October 11, 1955. Before February 8, 1956, four installments had been paid on this note, leaving a balance owing thereon on that date of $1,028.04.

On February 8, 1956, Mel A. Bullock, a salesman employed by Nelsens of Omaha but working for Nelsens of Lincoln, contacted the appellees and took them to Omaha. There appellees purchased a 1949 Mercury from the display floor of Nelsens of Omaha for a consideration of $525, trading in a 1940 Buick on the deal. They were allowed a tradein value of $75 for the Buick, thus leaving a balance of $450 owing on the purchase price of the Mercury. Appellees had previously advised Bullock they would have to finance any balance owing if they purchased a car as they could not pay cash but would need time in which to pay for it. And, in this respect, they had also advised him they would like to combine such loan, if possible, with the balance owing on the indebtedness they had on the trailer. Bullock assured them that could be done.

After the deal had been made Bullock introduced the appellees to Sharp and advised Sharp of the arrangements. Sharp then took appellees into his office and

arranged a loan to cover both obligations, being familiar with the obligation owing on the housetrailer. Sharp advised appellees there would be an insurance premium of $62 and a finance charge of $116.25 in connection with the loan and that the loan would be payable in installments, the first being in the sum of $39.54 and the balance would be payable in 25 installments of $64.67 each, or a total of $1,656.29 to cover the following items: Balance owing on purchase of 1949 Mercury, $450; balance owing on indebtedness to Nelsens of Lincoln on the housetrailer, $1,028.04; insurance premium, $62; and finance charges, $116.25. These are all shown on the purchase agreement prepared by Sharp, executed by appellees at that time, and witnessed by Bullock and pursuant to which the note herein involved was prepared by Sharp and executed by appellees along with a chattel mortgage on both the car and housetrailer. The chattel mortgage was given as security for the note.

"An automobile dealer may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in prices may exceed lawful interest for a loan." State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. See, also, Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N. W. 2d 19; Nelson v. General Credit Corp., 166 Neb. 770, 90 N. W. 2d 799; McNish v. General Credit Corp., supra; State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

However, "In order to have the foregoing principle apply it must appear that the buyer actually was informed of and had the opportunity to choose between a time sale price and a cash sale price." State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. See, also, Curtis v. Securities Acceptance Corp., supra; Nelson v. General Credit Corp., supra; McNish v. General Credit Corp., supra.

It is not a time sale if a car dealer, in selling a car, actually agrees with the buyer that he will finance the balance of the cash purchase price agreed upon, and does so, even though at the time he informs the buyer of the amount he will be required to pay and the terms thereof. Such a transaction would be a loan to finance the balance of the cash purchase price and, if payable in installments, must meet the requirements of the statutes relating thereto. And the fact that the buyer knew the terms and provisions of such loan at the time it was made and voluntarily entered into it would not have the effect of waiving the illegality of any provision thereof, if such provision was actually in violation of any of the inhibitory provisions of the installment loan statute. See State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55.

"The installment loan statutes include all persons or parties violating any of the inhibitory provisions thereof whether they be licensees or nonlicensees." State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. See, also, Curtis v. Securities Acceptance Corp., *supra;* Nelson v. General Credit Corp., *supra;* McNish v. General Credit Corp., *supra;* State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

There is no question of fact as to the note herein involved being an installment loan to finance the balance owing on the purchase price of the car purchased by appellees on February 8, 1956, and to cover the balance owing on appellees' loan to Nelsens of Lincoln, which had been assigned by it to Nelsens of Omaha. This fact is corroborated by a letter from Nelsens of Omaha to appellee Roger L. Robb, dated December 27, 1956, advising it had sold appellees' contract to the bank but advising him: *"We will continue to finance and make loans,* and will look forward to selling you another car, truck, or housetrailer, *and financing it for you."* (Emphasis ours.) This letter was signed by A. C. Nelsen

whose relationship to Central Credit, Nelsens of Omaha, and Nelsens of Lincoln has been hereinbefore set forth.

Section 45-138, R. S. Supp., 1955, here applicable, provides, insofar as here material, that: "No licensee shall enter into any contract of loan under sections 45-114 to 45-155, under which the borrower agrees to make any payment of principal more than twenty-one calendar months from the date of making such contract, if such contract is not secured by a bona fide duly recorded mortgage on real estate owned by the borrower, * * *."

It is self-evident that the installment loan herein involved provides for installment payments beyond 21 months from the making thereof. In A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687, we said: "A loan made by a licensee under the installment loan law which is not secured by a real estate mortgage and is not due or payable within the period of 21 months as provided for in section 45-138, R. R. S. 1943, is violative of said section and void." See, also, State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215.

But appellants contend that appellees failed to prove that the indebtedness was not secured by a bona fide duly recorded mortgage on real estate owned by them. It is true the appellees were never asked directly if such was the situation. However, the evidence does establish that Sharp drew up all the papers executed in connection with the sale and loan, which appear to be the purchase agreement, note, and chattel mortgage given to secure the note. We think the purchase agreement fully reflects the arrangements made by the parties. It provides, in addition to the 1949 Mercury, that the only "Additional Security" will be a "1950 Safeway Housetrailer." No mention is therein made of any real estate being given as additional security. The agreement goes on to recite: "The above order consti-

tutes the entire terms and agreement between us in reference to the above vehicle." The chattel mortgage given responds to the items of the purchase agreement. We find the record fully establishes the obligation here in question was not secured by a bona fide duly recorded mortgage on real estate owned by the appellees.

The effect of such violation is to make such contract void and uncollectible and a lender should have nothing in such a situation, State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; A-1 Finance Co., Inc. v. Nelson, *supra;* Nelson v. General Credit Corp., *supra;* and the lender, or those to whom any payments have been made thereunder, must return the payments received. State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; McNish v. General Credit Corp., *supra.*

Appellees paid to Nelsens of Lincoln the first 11 installments due under the terms of the note, being $39.54 for February 1956, and $64.67 for each of the months of March through December of 1956, or a total of $686.24. It is for this amount, plus interest, that the trial court, on January 13, 1959, rendered a judgment against Central Credit, Nelsens of Omaha, and Nelsens of Lincoln. Judgment was for $788.31.

On December 24, 1956, Nelsens of Omaha, the note having been assigned to them by Nelsens of Lincoln, sold and assigned to the bank the balance of the note for the sum of $920.88, there being at that time a total of 15 future installments unpaid having a face value of $970.05. Appellees paid each of the installments of $64.67 due in January, February, and March of 1957, to the bank and then, after this suit had been started on April 13, 1957, paid the bank the sum of $783.92, being the balance due on the note as computed by the bank. It was for these payments to the bank, and interest thereon at 6%, that the trial court, on January 13, 1959, rendered its judgment against Central Credit, Nelsens of Omaha, Nelsens of Lincoln, and the Bank.

The amount of the judgment rendered was for $1,068.34.

It appears from the record that shortly before appellee Robert L. Robb was graduated, which was on August 2, 1957, that he sold the housetrailer and in order to give a clear title thereto he paid off the bank, whereupon Nelsens of Lincoln gave him title to both the car and housetrailer.

Looking through form to substance, as we should do in cases of this character (see State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; Curtis v. Securities Acceptance Corp., *supra;* Nelson v. General Credit Corp., *supra;* State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215), we find Nelsens of Lincoln, Nelsens of Omaha, and Central Credit to be three corporations owned by the same persons, having the same principal offices, and managed by officers having authority to deal for all of them for the one common purpose of selling and financing the sale of cars, trucks, and trailers. As, for example, when the housetrailer was sold by Nelsens of Lincoln the paper was assigned to Nelsens of Omaha and the collection thereof supervised and handled through Central Credit although the installment payments were made to Nelsens of Lincoln. Then, when the 1949 Mercury was sold, although the title thereto was in Nelsens of Omaha, the paper therefor was taken in the name of Nelsens of Lincoln and the title thereto transferred by Nelsens of Omaha to Nelsens of Lincoln. Apparently the note was immediately transferred to Nelsens of Omaha and payments, although made to Nelsens of Lincoln, were immediately transferred to Nelsens of Omaha to be credited to appellees' account on the books of Nelsen of Omaha under the supervision of Central Credit. In view of the foregoing, we think the trial court was correct in holding all three of these appellants liable for all payments made by appellees as they were all directly interested in the subject matter thereof.

Appellants contend the trial court erred when it refused to grant their motion for a jury trial, stating: "It was our contention at the time the motion was made, as it is now, that plaintiffs' amended petition did not set forth facts upon which the court could exercise its equitable powers; and therefore plaintiffs' only cause of action was for the recovery of money." They go on to state that: "After plaintiffs made the July 30 payment it was no longer necessary or possible for the trial court to exercise its equitable powers because upon receiving the payment from the plaintiffs the bank cancelled the note and chattel mortgage, released the liens on the certificates of title to the automobile and trailer house, and returned these instruments to the plaintiffs * * *. The allegations of plaintiffs' amended petition alone clearly show that there was no equitable relief to be granted. In fact, the only equitable relief which plaintiffs prayed for was an order declaring the promissory note to be void and uncollectible and at the same time the allegations of their petition clearly showed that the note had been paid in full and failed to show that any demand was being made thereon which required or justified equitable relief." However, we need not answer the question raised. Here the facts are not in dispute and the effect thereof is a matter of law. In view of that fact, the following principle is applicable and controlling: "It is error to refuse a request for a jury trial in an action at law, but where the one making the request has no substantial cause of action or defense, and the judgment of the trial court is the only one which could have been rendered in the case, such refusal is error without prejudice, for which the judgment will not be reversed." Worrall Grain Co. v. Johnson, 83 Neb. 349, 119 N. W. 668.

This action, to have the entire obligation declared void and uncollectible, was commenced by appellees on April 13, 1957. As to the payment made by appellees to the bank subsequent thereto on July 30, 1957, in the

sum of $783.92 the appellants say that: "A payment of money, on claim of right thereto by the person to whom made, and with knowledge of all the facts, constitutes in law a voluntary payment and is not subject to recovery." Appellees contend the payment was not voluntarily made because, at the time it was made, appellee Robert L. Robb was about to be graduated and, having accepted employment in Mountain View, California, it was necessary for him to dispose of his housetrailer; that he could not sell it subject to the lien; and that, in order to give the purchaser a clear title, he had no other alternative than to pay the bank the balance owing so the lien would be released and he could get a good title thereto.

The principle on which appellants rely is stated in Meyer v. Rosenblatt & Son, 119 Neb. 471, 229 N. W. 771, as follows: "Where one has voluntarily, with full knowledge of the facts, paid a disputed demand, which he claimed he did not owe, he cannot ordinarily recover it back on the ground of its invalidity." See, also, Malec v. ASCAP, 146 Neb. 358, 19 N. W. 2d 540; Weber v. Kirkendall, 39 Neb. 193, 57 N. W. 1026, on rehearing, 44 Neb. 766, 63 N. W. 35; Baldwin v. Foss, 71 Iowa 389, 32 N. W. 389; American Surety Co. v. Steen, 86 Okl. 252, 208 P. 212.

In Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122, we said: "The design of this law is to license and control the business of making installment loans and to restrict the enforcement of collection of illegal loans once they have been made." It not only provides that a loan made in violation thereof shall be void and uncollectible, but further provides that the lender is not entitled to receive any principal, interest, or charges on such loan. See State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55. In view thereof the lender must return all payments which he has received on such void loan. See McNish v. General Credit Corp., *supra*. Such legislation is within the pub-

lic policy making power of the state. See, State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; McNish v. General Credit Corp., *supra;* Althaus v. State, 99 Neb. 465, 156 N. W. 1038. All such borrowers are regarded not as in pari delicto but as in vinculus to the lenders to whom they owe no duty in equity. See, State ex rel. Beck v. Associates Discount Corp., 168 Neb. 298, 96 N. W. 2d 55; Curtis v. Securities Acceptance Corp., *supra;* McNish v. General Credit Corp., *supra;* State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215. As stated in Seebold v. Eustermann, 216 Minn. 566, 13 N. W. 2d 739, 152 A. L. R. 585, by quoting from Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265: "The borrower is not particeps criminis with the lender, whatever his knowledge or intention may be. The lender alone is the violator of the law, and against him alone are its penalties enacted."

As stated in Chakford v. Sturm (Fla.), 65 So. 2d 864: "Under a statute providing that usurious interest shall be forfeited, a mortgagor 'does not waive his right to recover usurious payments by paying the mortgage debt, including usury, without protest.' "

We think here the principle contended for by appellants has no application because the legislative declaration of public policy applicable to installment loans, as determined by this court, provides, in case of any violation of the inhibitory provisions of the Installment Loan Act, that such loan shall be void, uncollectible, and the borrower is entitled to a refund of all money paid thereunder. To hold otherwise would be to defeat that purpose.

We think, as stated in Cuneo v. Bornstein, 269 Mass. 232, 168 N. E. 810, that: "The statute was passed as a protection to the borrower; it was intended to make the statute effective and to prevent its evasion by indorsing notes given for such loans to third parties. It would afford little protection to a borrower if the notes given contrary to the statute would be valid in the hands

of a holder in due course. In our opinion the word 'void' was used in its technical sense; the notes were void at their inception and of no validity in the hands of Glickman."

We have often said the violation of such inhibitory provisions in connection with any indebtedness, however acquired, renders such indebtedness void and uncollectible. See, Curtis v. Securities Acceptance Corp., *supra;* State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215; Powell v. Edwards, *supra.* We think this would be applicable to the bank or anyone who acquired the ownership of such indebtedness.

It is further contended by appellees that other requirements of the Installment Loan Act were not complied with by certain of the appellants in the handling of the loan herein involved. In view of our holding, as hereinbefore set forth, it is not necessary to discuss them. We have come to the conclusion that the lower court was correct and therefore affirm its judgment.

AFFIRMED.