HIGHWAY EQUIPMENT & SUPPLY CO., A CORPORATION, APPELLEE, V. DEWEY L. JONES ET AL., APPELLANTS.

153 N. W. 2d 859

Filed November 3, 1967. No. 36612.

John L. Mattox and R. J. Obbink, for appellants.

Crosby, Pansing, Guenzel & Binning and Theodore L. Kessner, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an action on a promissory note in the principal sum of $3,798.37, brought by the plaintiff, Highway

Equipment & Supply Co., against the defendants, Dewey L. and Buck E. Jones. Defendants asserted usury as a defense and also that the original indebtedness was the result of misrepresentation and fraud in the sale of a power shovel by plaintiff to defendants. A jury was waived and, after trial, the district court found for the plaintiff for the amount due on the note, including interest and charges. The defendants have appealed.

On March 8, 1962, the defendants executed a note payable to the State Securities Company in the amount of $3,798.37. The note was endorsed by the plaintiff by which it guaranteed the payment of the note. The defendants defaulted on the note after making one payment of $422 thereon. On December 11, 1963, the State Securities Company demanded payment of the note by the plaintiff pursuant to its guaranty. Plaintiff paid the amount due on the note, including interest and charges, the same being $3,630.04. The State Securities Company then endorsed the note as follows: "Pay to the order of Highway Equipment & Supply Co. Without recourse." The note was delivered to the plaintiff and on January 16, 1964, plaintiff brought this action against the defendants for the $3,630.04 it was required to pay on its guaranty.

The history of the transaction resulting in the execution of the note in suit is substantially as follows: Dewey L. Jones and his son, Buck E. Jones, were engaged in the quarrying of rock for industrial purposes. They were in need of a power shovel in the quarrying of rock to eliminate excessive hand labor. Some time prior to April 12, 1961, the defendants were contacted by one Ratliff, a salesman for the plaintiff company, concerning their needs. He recommended a used Michigan C-16 power shovel which the plaintiff had at its place of business in Lincoln. On April 11, 1961, the two defendants inspected the power shovel, ran the motor, and generally examined the machine. On April 12, 1961, defendants entered into a contract to purchase the power shovel for the sum of $5,500 and a time sale differential

of $526. A downpayment of $500 was made, the balance to be paid in monthly installments. Under date of April 17, 1961, defendants were notified by letter by plaintiff that plaintiff's claim for $5,526 had been assigned to the First Continental National Bank & Trust Company of Lincoln. Under date of June 3, 1961, defendants were notified by letter by plaintiff that the contract was assigned to the State Securities Company and that future payments should be made to that company. The record shows that five monthly payments were made to the State Securities Company between July 3, 1961, and October 17, 1961. In the spring of 1962, defendants came to the office of the plaintiff to discuss the payment for the power shovel. On March 8, 1962, the defendants went to the State Securities Company and executed the note here sued on which was guaranteed by the plaintiff.

It is the contention of the defendants that after the purchase of the power shovel, the plaintiff delivered it to them at the place of their quarry operation. They assert that the power shovel never operated properly, that it was continually breaking down, and that it was misrepresented as to its condition. There is evidence that the machine was recently painted and that cracks in the frame and castings were filled with paint and unobservable. On the other hand, the machine was inspected by the defendants before its purchase. The defendants admit long experience in the use and operation of similar equipment. They admit the running of the motor during their inspection but state they were unable to test the boom and shovel and the mobility of the machine because it was surrounded by other heavy equipment that prevented more inspection and testing than was done. They did not demand the opportunity to further test the machine and elected to purchase it on the limited inspection made. The record discloses no evidence of misrepresentation or fraud. The only evidence that could possibly be construed as such is the

statement that the machine was suitable for defendants' needs which defendants concede if it was in proper repair. There is no evidence of warranty or representation of condition or performance. We necessarily conclude that defendants purchased the power shovel on the inspection they made. The findings of the trial court, hearing the case without a jury, were correct.

The defendants assert that the note in suit is usurious. It is the contention of defendants that the contract of sale between plaintiff and defendants provided for a sale price of $5,500 and a time sale differential of $526. This contract was first assigned to the State Securities Company and later, on March 8, 1962, the note in suit was executed payable to State Securities Company with a signed endorsement by the plaintiff guarantying its payment. It follows, defendants contend, that the substitution of the note with plaintiff's endorsement for the assignment of the contract is merely a change in the form of the obligation only and the defense of usury is as available to one as the other. Plaintiff contends, however, that the State Securities Company is licensed under the Industrial Loan and Investment Companies Act, Chapter 8, article 4, R. R. S. 1943, and that the time sale differential charged by the State Securities Company is authorized and permitted by that act. It follows, it is contended, that the time sale differential charged is valid even though the money was borrowed to pay a usurious debt.

The record shows that the State Securities Company is an industrial loan and investment company, holding a license as such. The terms of the note as regards the interest charged is within the maximum charge permitted by section 8-418, R. R. S. 1943, but is in excess of the 9 percent per annum allowable to a nonlicensee under the Industrial Loan and Investment Companies Act, section 8-418, R. R. S. 1943.

It is contended by the plaintiff that the note in suit and the proceeds thereof were used by the defendants

to extinguish a preexisting indebtedness to the plaintiff and the fact that the preexisting indebtedness was or may have been based on a usurious contract between plaintiff and defendants does not have the effect of tainting the note with usury. It is the general rule that a loan of money to a person who uses it to pay off a usurious obligation is not tainted with the usury of the usurious obligation. Steen v. Stretch, 50 Neb. 572, 70 N. W. 48. See, also, Nelson v. General Credit Corp., 166 Neb. 770, 90 N. W. 2d 799; Curtis v. Securities Acceptance Corp., 166 Neb. 815, 91 N. W. 2d 19. These holdings are based on the theory that the subsequent lender in no manner became a party to the usurious loan and is innocent of any participation in the execution and payment of a usurious contract. This is made clear in the opinion in Steen v. Stretch, *supra.*

The evidence shows that the contract of sale of the power shovel between plaintiff and defendants contained a time sale differential of $526 which is alleged to be interest in excess of 9 percent per annum. Plaintiff is not a licensed industrial loan and investment company and is not permitted to charge the rates of interest set forth in section 8-418, R. R. S. 1943. Nor is plaintiff permitted to charge interest in excess of 9 percent per year. Elder v. Doerr, 175 Neb. 483, 122 N. W. 2d 528; General Motors Acceptance Corp. v. Mackrill, 175 Neb. 631, 122 N. W. 2d 742. The contract showing on its face a time sale differential in excess of 9 percent per annum was assigned to the State Securities Company. The defendants discussed the payments due under this contract with the then president of the plaintiff corporation on March 8, 1962, and on the same day defendants went to the State Securities Company and executed the note in suit, the note being endorsed and guaranteed by the plaintiff corporation, the endorsement bearing no date. It is the contention of defendants that the note and endorsement were a part of the same transaction, that the note was not a bona fide, distinct, and separate loan or transaction,

and that its purpose was to exact a greater charge than was otherwise permitted. Under these circumstances, it is contended that the note, subsequently paid by the plaintiff under its liability as guarantor, is tainted with the usury of the contract of sale of the power shovel and is not avoided by the change in the form of the obligation so far as plaintiff is concerned.

The evidence shows that the contract of sale was usurious on its face. Plaintiff assigned the contract to State Securities Company as security for a loan. There is no evidence that the assignment was without recourse. Payments due under the sale contract became in default and, after a discussion with plaintiff, defendants agreed to continue making payments. They went from plaintiff's place of business to the State Securities Company on the same day and executed the note in suit to put the obligation in good standing. The original contract was not delivered to the defendants on the giving of the note, nor was a receipt given as payment of the contract price. Thereafter, plaintiff guaranteed the note by endorsement. There is no evidence of any payment of money by State Securities Company for the note. The evidence sustains a finding that the note was given as a renewal of the obligation of the sale contract which had been assigned as security for a loan. Under such circumstances, there was no payment of the obligation of the usurious contract within the rule announced in Steen v. Stretch, *supra,* and similar cases.

The assignment of the usurious contract to the State Securities Company and its subsequent renewal by that company does not operate to purge the renewal note of the usury in the sale contract.

The legal effect of an assignment of a usurious contract as security and its renewal in note form, guaranteed by the seller in the original contract of sale, is that the original seller will pay the obligation if the purchaser under the usurious contract and the maker of the note does not. This is not a transaction involving the ex-

tinguishing of the indebtedness by a bona fide, distinct, and separate loan so as to purge the original contract of usury.

In any event, under the law of this state, the usury in the original contract of sale follows into the renewal note. "When a void contract is renewed by the giving of a renewal or substituted contract, the invalidity follows into and becomes a part of the latter contract, making it subject to the defense of invalidity to the same extent as was the original obligation." Nelson v. General Credit Corp., *supra*. Plaintiff contends that this rule is not applicable for the reason that in that case the relation of principal and agent existed between the parties. But this is not a controlling factor.

In Robb v. Central Credit Corp., 169 Neb. 505, 100 N. W. 2d 57, we quoted the following with approval: "We think, as stated in Cuneo v. Bornstein, 269 Mass. 232, 168 N. E. 810, that: 'The statute was passed as a protection to the borrower; it was intended to make the statute effective and to prevent its evasion by indorsing notes given for such loans to third parties. It would afford little protection to a borrower if the notes given contrary to the statute would be valid in the hands of a holder in due course. In our opinion the word "void" was used in its technical sense; the notes were void * * * ' "

In State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215, this court cited with approval the following from 55 Am. Jur., Usury, § 96, p. 390: "Since the usurious character of a transaction is determined as of the date of its inception, if a contract is usurious in its inception no subsequent transaction will cure it. Hence, where a usurious contract is renewed by the giving of a renewal or substituted contract, the usury follows into and becomes a part of the latter contract, making it subject to the defense of usury to the same extent as was the original obligation. The taint attaches to all consecutive obligations or securities grow-

ing out of the original usurious transaction, and none of the descendant obligations, however remote, are free from it if the descent can be traced."

The trial court misapplied the law in holding, under the established facts, that the renewal of the amount due under the usurious contract of sale had the effect of purging the renewal note of the taint of usury.

The penalty for usury at the time the usurious contract of sale was entered into was the loss of principal, interest, and charges. In 1963, a special session of the Legislature changed the penalty for usury to a loss of all interest and charges, such change in penalties to apply retroactively to all transactions not reduced to final judgment on the effective date of the act. Legislative Bill No. 17, 1963 Special Session, now sections 45-137, 45-138, 45-154, 45-155, and 45-155.01, R. S. Supp., 1965. The constitutionality of this act was sustained in Davis v. General Motors Acceptance Corp., 176 Neb. 865, 127 N. W. 2d 907.

We therefore hold that plaintiff is entitled to judgment for the principal amount of the original contract of sale less all payments made, including all interest and charges paid thereon. While the action is one at law and the findings of fact have the effect of a jury verdict, the error of the trial court is one of law and clearly wrong. The judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff in accordance with the holdings of this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.