EDWARD PETERSON ET AL., APPELLEES, V. STATE OF NEBRASKA ET AL., APPELLANTS.

FILED MAY 23, 1925. No. 24376.

1. **Venue:** SUIT AGAINST STATE. Under provisions of section 1105, Comp. St. 1922, the state may be sued in the district court of the county where the capital is situated, in any matter founded upon or growing out of a contract, expressed or implied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state.

2. **States:** ACTION AGAINST: CONTRACT WITH DEPARTMENT OF PUBLIC WORKS. An action founded upon a contract with the

Peterson v. State.

department of public works, which has been previously authorized by the legislature, is essentially a contract with the state, and when a claim arising out of such a contract has been presented to the auditor of public accounts, and disallowed by him, in whole or in part, an action may be brought thereon against the state.

3.   Appeal:  Findings by Court.  "Where the district court acts in the place of a jury in determining an issue of fact on conflicting evidence sufficient to support a judgment in favor of either party, the finding on that issue will not be reversed on appeal unless clearly wrong."  *In re Estate of Kane*, 109 Neb. 449.

4.   Evidence examined, and *held* sufficient to support the judgment.

Appeal from the district court for Lancaster county: Willard E. Stewart, Judge.  *Affirmed*.

*O. S. Spillman, Attorney General,* and *Lloyd Dort,* for appellants.

*Jacob Fawcett, Thomas S. Allen* and *D. W. Merrow, contra.*

Heard before Morrissey, C. J., Dean, Day and Good, JJ., and Redick, District Judge.

Day, J.

Action by plaintiffs to recover from the state of Nebraska a balance of $47,428.72, alleged to be due upon a contract for the construction of a public road.  By agreement of parties a jury was waived, and trial had to the court, resulting in a judgment in favor of the plaintiffs for $30,305.54 with interest thereon, aggregating $33,459.41. Defendant appeals.

It appears that on May 5, 1921, the plaintiffs entered into a contract with the department of public works, acting for the state of Nebraska, to construct a road designated as Federal Aid Project, No. 102 A, in Sioux county.  In the notice to contractors calling for bids for the construction of the road, the quantities of materials to be removed, such as earth, solid rock, loose rock, and other materials, were stated as estimates and were to be used only as a basis for bids.

The plaintiffs submitted a bid in which they proposed to remove the earth for 39 cents a cubic yard, the solid rock for $1.80 a cubic yard, the loose rock for 90 cents a cubic yard, and other materials for prices a cubic yard set forth in the proposal. Based upon the estimated amount of material to be moved in the various classifications, the plaintiffs bid $68,613.97.

The proposal, submitted by plaintiffs, contained a stipulation as follows:

"This proposal is made with the understanding that the various items of work may be necessarily increased or decreased, and that these unit prices will apply to the increased or decreased quantities as fully as to the estimates of quantities as given herein."

The plaintiffs' proposal was accepted, and a contract embodying the terms of the proposal entered into.

There is no dispute about the total number of cubic yards of material removed. The controversy arises over the classification of certain quantities of material removed. The plaintiffs claim that, in the performance of the contract, they were required to excavate and remove 52,000 cubic yards of solid rock, 15,000 cubic yards of loose rock, 58,198 cubic yards of earth, and other smaller items not necessary to set out in detail, for which, under the contract, they were entitled to receive $129,296.01, of which sum the plaintiffs have been paid $81,867.29, leaving a balance due of $47,428.72.

The specifications, which were a part of the contract, defined the various materials to be removed, and, so far as pertinent to the present controversy, were as follows:

"Solid rock excavation will include all rock in masses which cannot be removed without blasting, also all detached rock or boulders measuring not less than one cubic yard each. Brule clay and shale and all such material that cannot be handled with grading machinery and which necessitates the use of explosives will be classified and paid for as solid rock."

Peterson v. State.

Two main contentions are made on behalf of the state for a reversal of the judgment: First, that the court was without jurisdiction to hear and determine the cause; and, second, that the evidence does not support the judgment.

It is urged by counsel for the state that the court was without jurisdiction because permission was not granted by either branch of the legislature to sue the state. ·

It appears that before the action was brought the plaintiffs presented their claim to the department of public works for approval, which was denied. The board, by its secretary, indorsed upon the claim: "This bill is disapproved by reason of a disagreement as to classification." Plaintiffs then presented the claim to the auditor of public accounts, and demanded that he issue the usual warrant in payment thereof. The auditor indorsed on the back of the claim:

"Filed Dec. 26, 1922. This claim is disallowed for the reasons as stated by the secretary of public works on the face of the voucher, this 26th day of December, 1922. Geo. W. Marsh, State Auditor." .

The Constitution, article V, sec. 22, provides:

"The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suit shall be brought."

Acting upon the mandate of the Constitution, the legislature of 1877 passed an act entitled: "An act to provide in what courts the state may sue and be sued." Laws 1877, p. 19. The provisions of this act, in so far as they affect the question now being considered, are set forth in sections 1100, 1105, Comp. St. 1922.

Section 1100 provides:

"The several district courts of the judicial districts of the state as now provided for and established by the Constitution of the state, and of such judicial districts as may hereafter be provided by law, shall have jurisdiction to hear and allow the following matters:

"First. All claims against the state filed therein which have previously been presented to the auditor of public

accounts, and have been in whole or in part rejected or disallowed."

Section 1105 provides:

"The state may be sued in the district court of the county wherein the capital is situated, in any matter founded upon or growing out of a contract, expressed or implied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state."

In *State v. Stout,* 7 Neb. 89, the court had under consideration a case involving the construction of the provisions of the statute above set out. The opinion in the case clearly recognizes the right to maintain an action against the state based upon contract, expressed or implied, but denied the right of the plaintiff to recover upon the ground that he had failed to present his claim to the auditor of public accounts for adjustment. In that case it was said: "The state can be sued only on claims that have been first presented to the auditor of public accounts for adjustment, and which have been in whole or in part rejected." The same principle was announced in *State v. Mortensen,* 69 Neb. 376.

In the instant case the plaintiffs duly presented their claim to the auditor of public accounts, and the same was disallowed. The plaintiffs have complied with all of the requirements of the statute as a condition precedent to their right to bring the suit. The action was one growing out of a contract originally authorized by legislative enactment. Under the circumstances presented by the record, it was not necessary that they obtain permission of the legislature, or at least one branch thereof, to bring the action.

Is the evidence sufficient to support the judgment?

As before stated, the principal dispute arises over the classification of the materials removed in the performance of the work. It is earnestly insisted, on behalf of the state, that the great weight of the evidence supports the state's contention that, in the performance of the contract, the plaintiffs removed approximately 24,652 cubic yards of solid rock, and 3,687 cubic yards of loose rock, and that the re-

mainder of the material removed should be classified as earth.

The testimony bearing upon the classification of the materials is very voluminous and covers more than 700 pages of the record. It will serve no useful purpose to discuss the evidence in detail and we will not attempt to do so.

In behalf of the state the project engineer, who was present when the work was being done and made observations for the purpose of classifying the materials, testified that plaintiffs removed 24,652 cubic yards of solid rock, 3,689 cubic yards of loose rock, and that the balance of the material removed came within the classification as earth. The testimony of the project engineer was supported in part by the testimony of other witnesses.

The testimony shows that, in performing the contract, it was necessary to remove a large quantity of material designated by some of the witnesses as "packed sand" and by others as "sand rock," "butte rock," and "brule clay." Whether this material came within the classification of solid rock was the principal item in dispute.

The specifications defined the various materials for classification purposes as follows:

"Solid rock excavation will include all rock in masses which cannot be removed without blasting, also all detached rock or boulders measuring not less than one cubic yard each. Brule clay and shale and all such material that cannot be handled with grading machinery and which necessitates the use of explosives will be classified and paid for as solid rock.

"Loose rock excavations will include all slate or other rock which can be quarried or removed without blasting, also detached rock and boulders measuring not less than one cubic foot nor more than one cubic yard each.

"Ordinary excavation will include all loose stones, boulders, and other material of every description as found, which are not included in the above specifications as solid and loose rock, special excavation, or channel excavation."

In behalf of the plaintiffs a number of engineers, who had examined the completed work, testified that from an examination of the cuts they were able to compute with approximate accuracy the amount and classification of the materials removed, as defined by the specifications. One of the engineers, after making an extensive examination, testified that the project contained 46,720 cubic yards of solid rock and 9,441 cubic yards of loose rock. With slight variations as to yardage, other engineers agreed with these figures.

Witnesses for the plaintiffs testified that the so-called "packed sand" or "brule clay" was so hard that it could not be handled with ordinary grading machinery, and that it had to be "shot" in order to be removed.

As a part of the trial and by agreement of parties, the trial judge personally examined the project, and, upon consideration of all of the evidence, came to the conclusion that in the performance of the work the plaintiffs removed 44,565 cubic yards of solid rock, 3,689 cubic yards of loose rock, and the balance of the yardage removed was earth.

The testimony given by the engineers, based upon their examination after the work was done, was competent testimony on the point under consideration. The weight of such testimony was a question for the trial court acting in place of the jury in determining the issue of fact presented. The rule is well established that—

"Where the district court acts in the place of a jury in determining an issue of fact on conflicting evidence sufficient to support a judgment in favor of either party, the finding on that issue will not be reversed on appeal unless clearly wrong." *In re Estate of Kane,* 109 Neb. 449.

A number of other questions are argued in the brief for the state, but they all center around the main question of the sufficiency of the evidence to support the judgment. We deem it unnecessary to discuss the other questions suggested in the state's brief. We have considered them and they do not affect the conclusion reached. Upon an examination of the entire record, we are quite convinced

that the evidence supports the judgment of the trial court. The judgment is

AFFIRMED.

Note—See States, 36 Cyc. 901, 914.