CLARENCE G. BLISS, RECEIVER, APPELLANT, V. PETERS NATIONAL BANK, APPELLEE.

FILED DECEMBER 11, 1931. No. 27996.

I. D. Beynon, Battelle, Travis & Strehlow and F. C. Radke, for appellant.

Rose, Wells, Martin & Lane, contra.

Heard before GOSS, C. J., DEAN and EBERLY, JJ., and CHASE and HASTINGS, District Judges.

PER CURIAM.

This action, originally instituted by the Citizens State Bank of Superior, Nebraska, against the Peters National Bank of Omaha, was based on the allegations that the latter bank, entrusted with a draft for collection on or about the 18th day of May, 1927, had wrongfuly and negligently and carelessly failed to notify the plaintiff of the nonpayment of said draft until the 3d day of June, 1927, whereby, because of such delay, the original drawers of said draft were permitted to check out their account with plaintiff, and thus prevented plaintiff from reimbursing itself for the amount theretofore advanced by plaintiff bank thereon to the drawers thereof. After the commencement of the action, the insolvency of plaintiff was judicially determined, and Clarence G. Bliss, as receiver, was substituted for it. There was a trial to the court, a jury being waived, which

resulted in a finding by the court generally in favor of defendant and against plaintiff, and specifically "no want of due diligence on part of defendant." This was followed by judgment of dismissal. From an order overruling his motion for a new trial, the receiver appeals.

This litigation arises out of a note brokerage transaction. The "Bankers Service," hereinafter referred to, is a trade name employed by one A. L. Geiselman, then engaged in dealing with negotiable instruments at Omaha. On May 17, 1927, Elliott and Myers, grain dealers at Superior, Nebraska, were desirous of obtaining a loan. Accordingly on that day they executed, as parts of a single transaction, three separate instruments in writing, viz., a promissory note in usual form, payable three months after date to A. L. Geiselman, or order; a "warehouse and grain receipt" reciting that there had been by them "received in store for A. L. Geiselman * * * twenty-five hundred bushels of No. 2 hard wheat," which instrument also contained the stipulation, "that this warehouse receipt attaches to and becomes a part of a promissory note * * * and is given as security for the attached note;" also a draft in the sum of $2,450 "for note and receipt attached, at sight pay to the order of Citizens State Bank, Superior, Nebraska," and directed to "Bankers Service, 218-222 Brandeis Theatre Building, Omaha, Nebraska, c/o Peters National Bank," as drawee. The three instruments referred to, fastened together, were by Elliott and Myers deposited "for collection" with the Superior bank. This bank indorsed the draft, and transmitted the three instruments to the Peters National Bank, with a letter of advice, which, setting forth the inclosure of the draft drawn on the Bankers Service "through you," directed that the proceeds thereof, when collected, be transmitted to the American National Bank "for our use." The evidence of the plaintiff is that the Superior bank credited Elliott and Myers' checking account, and thereafter permitted withdrawals therefrom to be made by that firm. However, it is not claimed that the Peters National Bank had any notice or knowledge of this additional

transaction. The evidence in the record on behalf of the defendant bank is that immediately on receipt of the draft they attempted to present it at the office of Mr. Geiselman, but were unable to do so because the latter "was out of town." However, immediate acknowledgment of the receipt of the draft was made to the Superior bank, and that bank notified of the absence of Mr. Geiselman, the drawee. Thereafter daily efforts were made to present the draft, which were continued without success due to the absence of the drawee. On or about the 1st day of June following, on receipt by the Superior bank of the monthly reconcilements from the American National bank, it was discovered by the Superior bank that the proceeds of the draft had not been transmitted to that institution as directed by the letter of advice.

On the 3d day of June the Superior bank telegraphed the Peters National Bank in reference thereto, and received a prompt reply that the draft was then unpaid. On June 13 the Superior bank by letter instructed the Peters National Bank: "If our collection Elliott and Myers * * * May 17th, has not been paid, present again and insist on immediate payment." On the 17th of June, at the first opportunity, the draft was presented and payment was demanded of the drawee named therein, and by him unconditionally refused. All papers were then on that day returned to the sending bank. It may fairly be said that the record before us justifies the conclusion that the warehouse receipt was fraudulent, inasmuch as it was later discovered that the grain described therein was not in storage when the receipt was issued. However, the rule applicable to the situation seems to be: "An agent to collect a debt or claim must exercise ordinary care, skill, and diligence in the performance of all the duties incident to the undertaking, and will be liable to his principal for any loss which his negligence in this respect may occasion; but if the agent has acted in good faith and with ordinary care, skill, and diligence he will not be liable, * * * nor will he be liable if the principal himself has prevented him from collecting. What

will amount to due care on the part of the agent will depend upon the nature of the undertaking and all the circumstances in the particular case, and is ordinarily a question of fact for the jury." 2 C.J. 726.

It may be suggested at this point that the Nebraska rule, in view of the facts involved in this case, is that the correspondent bank to whom the plaintiff bank transmitted the draft for collection and remittance does not become the agent of the payee thereof and thus become liable to it for negligence in making the collection. The relation of principal and agent is between the drawers of this draft and the correspondent bank, the defendant herein. *Henefin v. Live Stock Nat. Bank,* 116 Neb. 331; *First Nat. Bank of Pawnee City v. Sprague,* 34 Neb. 318.

However, waiving for the present this question, still the fact remains that, even assuming the relation of principal and agent to have existed between the plaintiff and the defendant in the instant case, there is evidence in the record which, if believed, sustains the conclusion that the defendant in this case has, in all respects, acted in good faith and with ordinary care, skill, and diligence in the transaction. It is also true that the findings and determination of the trial court, where a jury is waived, are entitled to be given the same force and effect as the verdict of a jury. It follows, therefore, that, as the controlling question of fact involved herein has been determined against the plaintiff by the trial court, such determination must be given the same force and effect as the verdict of a trial jury, and, therefore, the judgment appealed from must be, and is,

AFFIRMED.