GRAND ISLAND FINANCE COMPANY, APPELLANT, V. DENNIS C. FOWLER, APPELLEE.

FILED MARCH 10, 1933.   No. 28453.

*Beeler, Crosby & Baskins, Francis P. Matthews* and *William P. Kelley,* for appellant.

*George N. Gibbs* and *William E. Shuman, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

This is an action of replevin for a Plymouth sedan automobile. Under the writ, the Grand Island Finance Company, plaintiff, recovered possession from Dennis C. Fowler, defendant, claiming a special ownership through a chattel mortgage. W. B. Hayes, a dealer in automobiles, sold the sedan to defendant, accepted a used car in part payment, took from him for the remainder a 376-dollar note secured by a chattel mortgage on the car sold, payable to himself in 16 monthly instalments for $23.50 each, and assigned the paper to plaintiff. Defendant paid $94 on his debt, but later failed to pay an instalment when due, leaving unpaid $282. After the default, plaintiff, as authorized by the note and mortgage, elected to declare the unpaid debt due and seized the mortgaged chattel by replevin for the purpose of foreclosure.

The action was defended on the grounds that Hayes was the agent of plaintiff in the transactions resulting in the execution of the note and mortgage; that the real payee in those instruments was plaintiff instead of Hayes, its agent, the forms being devices to evade usury; that the sum of the transactions was a loan; that the cash sale price of the Plymouth sedan was $550; that Hayes, acting for plaintiff, accepted in part payment a used car for $250 and exacted for the balance of $300 a note and mortgage for $376, which included unlawful interest at a rate exceeding 30 per cent. per annum; that the note and the mortgage were void under the forfeiture clause in the statute limiting the maximum rate of interest to 10 per cent. per annum, providing for issuance of licenses to members of a class of money-lenders and authorizing them to charge, in addition to such interest, a brokerage fee not exceeding one-tenth of the money actually lent—Comp. St. 1929, secs. 45-112 to 45-123; that by reason of the usury and the statutory penalty there-

for plaintiff did not have a lien on the Plymouth sedan or the right of possession thereof.

A jury was waived and the cause tried to the district court. There was a judgment against plaintiff, directing it to return the property or, if unable to do so, to pay defendant the adjudged value of $425 with legal interest from December 14, 1931, the date of the replevin, costs and damages of one cent for unlawful detention. Plaintiff appealed.

The parties seem to agree that the question to be determined is the nature of the business transacted— whether they entered into a contract of sale on credit for deferred payments or a contract for a loan to pay part of the cash purchase price, but they differ radically on the facts and the law that determine the issue.

Plaintiff's expressed understanding of the transactions is that Hayes, a regular dealer in automobiles, sold the car in litigation to defendant on part credit, taking a note and a mortgage which permitted deferred payments in monthly instalments, and sold the paper for value to plaintiff, a corporation engaged in financing purchasers of automobiles on credit; that the cash price was less than the credit price, the former being $550 and the latter $626; that the transaction was fair, lawful and free from usury; that these issues were conclusively established in favor of plaintiff and that there is no competent evidence to the contrary; that defendant did not prove a defense to the action of replevin.

In defending the judgment for the return of the automobile taken from defendant by replevin, he was forced into the position that he entered into an unlawful contract with plaintiff to borrow from it $300 and to pay interest at a rate exceeding 30 per cent. per annum and thus acquired a 550-dollar Plymouth sedan for a used car valued at $250 and $94 in deferred payments, and that the forfeiture of plaintiff's note and mortgage on account of usury was supported by the evidence and the law.

If defendant and Hayes, each acting for himself honestly and in good faith, entered into an agreement for the sale and purchase of the Plymouth sedan for the consideration of a 250-dollar Whippet car and a note secured by a chattel mortgage for $376, the balance of the purchase price, there was no defense to the action of replevin, because it is too plain for argument that a dealer in automobiles may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in price may exceed lawful interest for a loan. If the transaction was a loan for usury, as asserted by defendant, instead of a sale on time, the contracting parties entered into an unlawful agreement. Viewed in that light both participated in the lawlessness. On the face of the note and the chattel mortgage securing it, the transaction was legal and the contract enforceable. The burden was on defendant to prove that the chattel mortgage under which he procured the Plymouth sedan from Hayes was usurious.

Defendant himself adduced evidence that the Grand Island Finance Company, plaintiff, since its organization, has been engaged principally in financing purchasers of automobiles on time—buying their instalment notes. Hayes was a dealer in automobiles. Plaintiff was not licensed under the law permitting a class of money-lenders to charge a broker's fee in addition to interest at the rate of 10 per cent. per annum. Plaintiff solicited business from Hayes and furnished him a printed schedule of rates used in discounting paper, and also forms for notes, chattel mortgages and other documents, but this was not material to defense of usury, if the original sale was valid. *Commercial Credit Co. v. Tarwater*, 215 Ala. 123. Testimony of defendant as a witness in his own behalf may be summarized in part as follows: He initiated the negotiations by going to Hayes' place of business to trade a used Whippet car on another car and to get time for payment of the boot or the balance of the purchase price. The cash price for the Plymouth sedan was $550 and

defendant was told it would be more, if not paid in full at the time. He knew he would have to pay more for finance charges, including insurance, if he bought the car on time; talked with Hayes about the extent of finance charges; did not borrow money from Hayes; knew if he got credit he would have to pay more than the cash price; agreed on $250 as exchange price of Whippet car; understood he could not get the Plymouth car unless he paid $300 in cash or more on time; stood by while Hayes telephoned to plaintiff for terms on which it would finance the unpaid purchase price by taking Hayes' assignment of a chattel mortgage as security; knew the deal was closed when he learned the amount of the finance charges and signed the papers. Defendant did testify, however, that a price on time was not mentioned, but he knew that he could not make the deal without financial aid for the unpaid purchase price; that Hayes did not lend money on automobiles; that Hayes procured for him from plaintiff credit for $76 in addition to $300. Defendant made a financial statement to obtain this credit on the security of the chattel mortgage. Defendant signed and delivered to Hayes the chattel mortgage which designated defendant as purchaser and Hayes as payee and specificially provided for the payment of $376 to Hayes as the balance of the purchase price. By means of this written contract, showing that the balance of the purchase price on time was $376, defendant procured the car and used it for months. The note and chattel mortgage were formally assigned to plaintiff and the discount exceeded lawful interest based on a loan, but did not make the transaction usurious. *Commercial Credit Co. v. Tarwater*, 215 Ala. 123. The proper inference from all the writings, the payment of monthly instalments and other evidence is that all three interested parties at first understood the sum of the transactions to be a sale on credit for the unpaid purchase price and proceeded to carry out its terms. In passing on the validity of a contract, the court, in addition to other factors, may consider it in the aspect

in which the parties understood, treated and partially performed it as valid. There is nothing in the record to show that the difference of $76 between the cash price and the price on time was unfair or fraudulent or extortionate in view of the hazards of used automobiles as security for debts. The evidence, when considered in its entirety, does not support findings that plaintiff was the real payee in the note and chattel mortgage or that Hayes was the agent of plaintiff or that the transaction was a usurious loan. Transactions like the one in controversy have been held valid sales on time and not usurious loans. *Manufacturers Finance Trust v. Stone*, 251 Ill. App. 414; *General Motors Acceptance Corporation v. Weinrich*, 218 Mo. App. 68; *In re Bibbey*, 9 Fed. (2d) 944; *Commercial Credit Co. v. Tarwater*, 215 Ala. 123; *Standard Motors Finance Co. v. Mitchell Auto Co.*, 173 Ark. 875.

The judgment below is reversed, with directions to the district court to enter a judgment in favor of plaintiff and against defendant.

REVERSED.

GOOD, J., dissenting.

I have no criticism to make of the principles of law, as announced in the syllabus of the majority opinion. Some important facts are overlooked which, in my opinion, when fairly considered, require an affirmance of the judgment of the district court, instead of its reversal.

This is a law action, in which the parties waived a jury and tried the cause to the court. Under such circumstances, the finding of the trial court has the same force and effect as the verdict of a jury. *McCarter v. Cover*, 122 Neb. 691, same case in 122 Neb. 833; *Bliss v. Peters Nat. Bank*, 122 Neb. 76; *Cook v. Moats*, 121 Neb. 769; *National Cash Register Co. v. Chipman*, 122 Neb. 866; *Nebraska Nat. Bank v. Parsons*, 115 Neb. 770. We have further held that in an action at law, tried to the court without a jury, where there is sufficient evidence in support thereof, the finding of the court has the

same effect as the verdict of a jury and will not be disturbed on appeal, unless clearly wrong. *Ayres v. Atlas Ins. Co.*, 123 Neb. 285; *Farmers Cooperative Mercantile Co. v. Shultz*, 113 Neb. 801; *Prime v. Squier*, 113 Neb. 507; *Peterson v. State*, 113 Neb. 546; *Young v. Johnson & Blind*, 113 Neb. 149.

The real controversy in this action was whether the promissory note, the basis of plaintiff's action, was tainted with usury. The record reflects the following facts:

Defendant purchased from Hayes, an automobile dealer, an automobile for $550, trading in a used car for $250, and for the difference gave his promissory note for $376, payable in 16 instalments of $23.50 each. The first instalment was due in 6 days, the last instalment in 15 months and 6 days. The average time the instalments ran was 7.7 months. In other words, plaintiff, for the use of $300 for the term of 7.7 months, was paying $76, or at a rate of more than 39 per cent. per annum. Hayes was not able to finance transactions of this sort, and did not sell automobiles on time, except in form. He was the agent of the plaintiff, or at least had an arrangement with the plaintiff whereby he kept a supply of its blank mortgages, notes and forms, and made loans under such circumstances, making notes payable to himself, and immediately indorsing them to the plaintiff. In the instant case, before the deal was completed, Hayes, in the presence of defendant, called up plaintiff, to know precisely the amount for which the note would have to be drawn and the rate at which paid in instalments, and secured the information, which resulted in the giving of the note for $376. This note was made payable to Hayes, was immediately indorsed and transferred to the plaintiff. The evidence also shows that Hayes received from the plaintiff a commission out of the loan thus made, and was, therefore, the agent of plaintiff.

Section 45-105, Comp. St. 1929, with reference to usury, provides: "The acts and dealings of an agent in loaning money shall bind the principal, and in all cases where

there is illegal interest by the transaction of the agent, the principal will be held thereby as if he had done the same in person." And further provides: "Where the same person acts as agent for the borrower who obtains the money from the lender, he shall be deemed to be the agent of the loaner also." The statute made Hayes the agent of the plaintiff. The law denounces as usury any rate in excess of 10 per cent. per annum, with certain exceptions, but the plaintiff is not within the excepted class. In my view, the transaction was a flagrant violation of the usury statute. It ought not to be upheld.

In the case of *State v. Central Purchasing Co.*, 118 Neb. 383, paraphrasing the language there used, it is said (p. 389): "The courts in such a case as this are not bound by forms but will look beyond form to the real substance. Looking through the scheme of the plaintiff to acquire and retain an unlawful and usurious rate of interest for the use of its money, and discerning the real substance of its transactions, we are of the opinion that its transactions pictured in the evidence were not *bona fide* purchases of rights of action from its customers, but rather were loans of plaintiff to its customers. As such they were strongly infected with usury, were unlawful, and were contrary to the public policy of the state."

The contract rate was unlawful and unconscionable. The judgment of the district court is right, and it should be affirmed.