JAMES H. NELSON, APPELLANT, V. GENERAL CREDIT CORPORATION, A CORPORATION, ET AL., APPELLEES.

90 N. W. 2d 799

Filed June 6, 1958. No. 34356.

*Whelan & Whelan*, for appellant.

*Conway & Irons*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

There are two causes of action involved in this litigation. Plaintiff sues to recover the sum of $1,150 and interest from the General Credit Corporation, that being the amount paid on a promissory note calling for 23 monthly payments of $50 each. The 24th payment was for the sum of $674. When that payment became due plaintiff, in order to pay that balance, executed to the General Credit Corporation his promissory note in the sum of $787.46, payable in monthly installments of $47.86. Plaintiff had paid thereon four installments when this action was brought. The note for $787.46 was

sold by General Credit Corporation to Peoples Loan Company and certain payments were made to it. Both corporations are defendants here.

Plaintiff prayed for a judgment declaring the notes to be null and void; for a recovery of the amount of the payments made, with interest; for the surrender of an automobile certificate of title; for a release of all liens on the automobile; and for equitable relief.

The original note resulted from the sale of an automobile by Worthing Motor Company to the plaintiff. For convenience we will refer herein to General Credit Corporation as General Credit; to Peoples Loan Company as Peoples Loan; and to Worthing Motor Company as Worthing. Unless otherwise pointed out, reference will be made to the testimony as that of each of these parties under the above designations.

At the times here involved applicable to each, General Credit and Peoples Loan held licenses under the Nebraska Installment Loan Act. Peoples Loan was organized in 1955 by the son of the president of General Credit. Prior to the organization of Peoples Loan he had been an officer of General Credit and active in its affairs.

Multiple issues were made and submitted to the trial court resulting in a judgment dismissing both causes of action.

Plaintiff appeals. The issue presented here is the contention of the plaintiff that the original transaction was a cash sale with a loan to pay the balance; and that the loan was in violation of the law and hence the note was void and plaintiff was entitled to recover the amounts paid thereon. As to the second note it is plaintiff's contention that the invalidity of the first note followed into and became a part of the second note and that it, too, was void.

The defendants contend that the first note was but the payment of a time sale price and hence was valid

and that the second note was within the terms of the Installment Loan Act and was valid.

There are additional assignments of error here as to the admission of evidence and the filing of amended pleadings by defendants. The questions presented are not material to a decision here and will not be further mentioned.

We reverse the judgment of the trial court and remand the causes with directions.

The action was tried as one in equity and is considered here as on trial de novo.

The facts are not in dispute on material matters save as are mentioned here.

Plaintiff on October 21, 1952, went to Worthing to have his car repaired. He then discussed the purchase of a new car and the trade-in of his old car. The parties agreed upon the cash price of the new car at the figure of $2,340. The credit for the used car was agreed upon at the figure of $1,020, leaving the cash price for the difference of $1,320. A car order was prepared and signed by plaintiff showing these facts. A copy was given to plaintiff. It made no reference to a time sale price; however, following the printed word "Payments" on the order form is written the words "General Credit," indicating that the car order was not signed until the matters hereinafter set out were discussed. The above reference to "General Credit" appears in carbon on the copy delivered to plaintiff on the day of the transaction. However, on the car order which defendant introduced purporting to be the original order the cash selling price appears as $2,351.40 and the used car allowance as $1,031.40. The figures are in lead pencil and erasures are apparent. These changes were obviously made to conform to a detailed "car invoice" calculating the transaction. The words "General Credit" which appear on plaintiff's copy of the order appear also on the original offered by defendant with the words "General Credit" heavily lined out in lead pencil. No explanation ap-

pears as to when or why the last alteration of the order was made.

Plaintiff informed Worthing that he could not pay $1,320 in cash and that it would be necessary to go to a loan company to secure the money.

Plaintiff had recently come to Nebraska from California. He there had financed the payment of the trade-in car by a deferred payment plan. He knew how such a plan operated and that a deferred payment plan cost more money than a cash payment did.

Worthing asked plaintiff if he had a loan company in mind and was told that he did not. Worthing then agreed to and did contact General Credit, with whom it had theretofore done business.

It was agreed that plaintiff could not pay more than $50 per month on a deferred payment plan. Worthing could not figure the total amount required for the deferred payment because of that restriction. Worthing asked General Credit to calculate the amount of the payment that would be required so as to sell the note to General Credit at an amount that would pay Worthing the cash price of $1,320. General Credit then calculated the amount at $1,824, payable $50 per month for 23 months and $674 on the 24th month.

General Credit also required time to check plaintiff's credit record in California and did so, and after some hours advised Worthing that they would purchase a note and mortgage given for the above purpose.

In the meantime, Worthing had accepted the figure of $1,824 fixed by General Credit. On forms which it had been furnished by General Credit, Worthing prepared a promissory note for $1,824 payable to Worthing Motors and a chattel mortgage on the car to secure the payment of the note. Plaintiff signed these papers.

Worthing testified that it "relayed" the time price to plaintiff. However, this evidence is weakened by other testimony that it was "assumed" and "apparently" plaintiff knew the time price. Plaintiff testified that he was

not given a time price. However, he testified that he knew the amount of $1,824 was the amount recited in the note and mortgage and the provision for payment of it before he signed it.

When General Credit received satisfactory credit reports on the plaintiff, it made out and delivered a check to Worthing for $1,340. Worthing then endorsed the note without recourse and assigned and delivered the mortgage to General Credit.

General Credit then discussed the entire matter as to payments, insurance, etc., with the plaintiff.

The certificate of title recites that plaintiff had acquired the title to the automobile from Worthing subject to a mortgage to General Credit for the sum of $1,824. The automobile was delivered to plaintiff the following day, although the certificate of title bears the date of October 24, 1952, 3 days after the note and mortgage were executed. Thereafter plaintiff made the payments to General Credit, later executed the new note and mortgage to General Credit, and made payments thereon to General Credit and Peoples Loan as above recited.

It is noted that General Credit paid Worthing for the purchase of the note and mortgage $20 in excess of the cash price fixed for the transaction. This is described in the evidence as a "reserve" or a payment for the privilege of buying the instruments involved.

Beginning with Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429, down to and including McNish v. Grand Island Finance Co., 164 Neb. 543, 83 N. W. 2d 13, we have stated and restated the applicable rules. We quote from the summary contained in Mc-Nish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1: " '* * * an automobile dealer may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in prices may exceed lawful interest for a loan. * * * a time sale made in good faith at a price in excess

of a cash price, even though the difference exceeds lawful interest for a loan, which price is arrived at by schedules furnished by a finance company which solicits contracts so entered into between a purchaser and a dealer, may not be regarded as being tainted with usury. * * * These rules however do not apply where it is proved that the transaction was not made in good faith but that it was a scheme and a device pursued to evade the operation against it of the usury statute. * * * In such cases, however, the transaction between the buyer and seller must be a completed bona fide time price sale agreement.' * * * In cases of this character courts will look through the form to the substance of the transaction in order to determine whether there was a bona fide time sale or a loan."

Many of the facts of the case here are substantially the same as those in Grand Island Finance Co. v. Fowler, *supra,* wherein we held that they established a valid time sale. However, in Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122, we reviewed the Fowler case at length and refused to follow the fact conclusions of that case, although accepting in principle the rule of law there stated.

In State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215, we held: "In Grand Island Finance Co. v. Fowler, *supra,* our opinion makes clear that the sale must be honestly and in good faith executed by the dealer and purchaser for an agreed credit price in excess of a cash price in order to constitute a bona fide time sale transaction, and that if the transaction is in fact a loan for usury, the agreement is unlawful and void."

We went further in McNish v. General Credit Corp., *supra,* and held: "In order to have the foregoing principles apply it must appear that the buyer actually was informed of and had the opportunity to choose between a time sale price and a cash sale price. It is not enough to merely show that the instruments signed

evidencing the indebtedness refer to a time price or time differential when, in fact, the buyer was never quoted a time sale price as such."

It is well also to point out that Grand Island Finance Co. v. Fowler, *supra*, was decided in 1933 under the provisions of Comp. St. 1929, c. 45, art. I, and before the Legislature set out the public policy of this state by the enactment of Laws 1941, c. 90, p. 344.

Within the scope of the above rules each case must depend on its own facts and circumstances.

The facts and circumstances here point to the conclusion that this transaction originated as a loan by General Credit to the plaintiff. Plaintiff desired a loan. Worthing contacted General Credit, and gave it the base figures upon which to calculate the amount of the loan so that Worthing would receive its cash price. The transaction was thereafter the proceeding of General Credit in securing a credit report on plaintiff, in calculating the amount of the loan and the amount of the payments, and in determining insurance which General Credit required and its cost. It is clear that Worthing drafted the note and mortgage for General Credit so as to secure its cash price together with interest, insurance, and other charges exacted by General Credit.

It is clear, also, that Worthing had received its cash price from General Credit before the sale transaction was completed.

The facts and circumstances here do not bring this case within the scope of the rule last quoted from McNish v. General Credit Corp., *supra*. We conclude that this transaction was not a good faith sale at a time price by Worthing, but was in fact a loan by General Credit to plaintiff out of which Worthing received its cash price.

Section 45-138, R. R. S. 1943, provided: "Every loan contract shall provide for repayment of principal and charges in installments which shall be payable at approximately equal periodic intervals of time and so arranged that no installment is substantially greater in

amount than any preceding installment." The same section also provided: "Any contract of loan made in violation of this paragraph, either knowingly or without the exercise of due care to prevent the same, shall be void and the licensee shall have no right to collect or receive any principal, interest or charges on such loan."

In A-1 Finance Co., Inc. v. Nelson, 165 Neb. 296, 85 N. W. 2d 687, we held that any loan made by a licensee under the installment loan law which fails to conform to the above provision of the statute is a violation thereof and void.

The note given by the plaintiff to satisfy the last payment of $674 of the original note is likewise void. In State ex rel. Beck v. Associates Discount Corp., *supra*, we held: The usurious character of a transaction is determined as of the time of its inception, and if a contract is usurious in its inception, no subsequent transaction will cure it. Hence, when a usurious contract is renewed by the giving of a renewal or substituted contract, the usury follows into and becomes a part of the latter contract, making it subject to the defense of usury to the same extent as was the original obligation.

Consistent with this holding, it follows that the rule is: When a void contract is renewed by the giving of a renewal or substituted contract, the invalidity follows into and becomes a part of the latter contract, making it subject to the defense of invalidity to the same extent as was the original obligation.

It necessarily follows that both notes involved in this transaction were void as of the time of their inception.

We do not deem it necessary to consider other charges of illegality presented by this record.

The judgment of the trial court is accordingly reversed and the causes are remanded with directions to render a judgment in accord with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.