ROBERT (BOB) CURTIS, APPELLEE AND CROSS-APPELLANT, V. SECURITIES ACCEPTANCE CORPORATION, A CORPORATION, APPELLANT AND CROSS-APPELLEE, RAY MAHONEY, APPELLEE.

91 N. W. 2d 19

Filed June 13, 1958. No. 34349.

*William Keeshan* and *Mathews, Kelley & Stone,* for appellant.

*Wagner, Wagner & Conrad,* for appellee Curtis.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Robert Curtis, brought this action in equity against defendants, Securities Acceptance Corporation, and Ray Mahoney, its alleged agent who carried on a business of selling farm implements in the name of "Mahoney Sales & Service" in St. Edward. Plaintiff's action sought to have a certain promissory note and chattel mortgage upon a described tractor cancelled upon the ground that they were given for a loan which was null and void ab initio as usurious and in violation of sections 45-114 to 45-162, R. R. S. 1943, inclusive, which are known as the Installment Loan Act. Plaintiff also sought to recover from defendants all payments made on the note and mortgage with interest thereon, and equitable relief. As far as important here, the effect of defendant Ray Mahoney's answer was to deny generally, as was also the effect of defendant Securities Acceptance Corporation's answer. However, such defendant also filed a cross-petition, seeking an accounting of the amount due it from plaintiff upon the note and mortgage, together with a judgment therefor with interest at 9 percent; that in default of payment thereof by plaintiff for 20 days, the tractor should be ordered sold on execution as in foreclosure for satisfaction of the judgment; and the granting of equitable relief. As far

as important here, plaintiff's reply to defendant Mahoney's answer denied generally as did his reply and answer to the answer and cross-petition of defendant Securities Acceptance Corporation.

Hereinafter defendant Ray Mahoney will be called Mahoney, and defendant Securities Acceptance Corporation will be called defendant. In speaking of both, they will be called defendants.

On December 20, 1956, the issues were heard on the merits by the trial court at Columbus, Platte County, whereat the cause was taken under advisement, pending the filing of briefs by respective counsel, and it was stipulated that decree entered in Platte County should be transmitted by the court to the clerk of the district court for Boone County and such judgment should be binding on the parties as if the cause had been decided in Boone County.

Briefs were subsequently filed, and the trial court prepared a "memorandum opinion," reviewing therein some of the evidence and discussing and distinguishing certain cases upon which he intended to predicate his findings and conclusions in a judgment to be subsequently rendered. Evidently that opinion was sent to counsel for the parties, and on January 21, 1957, someone, the inference being that it was counsel for defendants, filed it with the clerk of the district court for Boone County, where it was journalized. Thereafter, on February 19, 1957, a stipulation signed by counsel for all the parties was entered into and filed in the district court for Boone County on February 25, 1957. Such stipulation provided in effect that the decree, bearing the approval as to form by counsel for the respective parties, might be signed and entered by the trial judge at chambers in the courthouse at Columbus, Platte County, without further notice to the parties, and then transmitted to the clerk of the district court for Boone County, together with such stipulation for filing and entry of record in that court.

Also, on February 25, 1957, there was filed in the dis-

trict court for Boone County a final judgment dated February 23, 1957, which found that defendant Mahoney sold the described tractor to plaintiff on September 24, 1954, for an agreed price of $2,950, whereupon plaintiff paid $1,180 thereon by cash and trade-in allowance upon an old tractor, leaving a balance of $1,770 unpaid upon the sale price. That on or about the same date, plaintiff executed and delivered to Mahoney a note and chattel mortgage on the new tractor for $2,161.84, payable in two amounts of $1,080.92, each respectively payable 1 and 2 years after date. That the amount by which the note exceeded the unpaid balance of $1,770 on the sale price of the tractor was the sum of $391.84, which represented interest charges exceeding the legal rate for forbearance of the unpaid balance of $1,770. That by reason thereof, plaintiff was entitled to have all payments made upon said note and mortgage credited against the unpaid balance of the purchase price of $1,770. That plaintiff had paid to defendant, after its purchase of the note and mortgage, the sum of $126.60 on or about September 29, 1955; $350 on or about November 30, 1955; and $12.60 on or about January 23, 1956. That after crediting such payments upon the unpaid balance of $1,770, there remained $1,280.80 still owing by plaintiff on such purchase price. That it was fair and equitable that plaintiff should pay to defendant said sum of $1,280.80 as a condition of cancellation of the note and mortgage in the principal amount of $2,161.84, and dated September 24, 1954.

Judgment accordingly was rendered in favor of defendant and against plaintiff for $1,280.80 upon payment of which the note and mortgage were ordered cancelled and released of record. It also ordered that upon failure of plaintiff to pay said judgment into the office of the clerk of the district court within 20 days, said farm tractor should be sold as upon execution to satisfy the judgment.

On February 25, 1957, plaintiff filed a motion for re-

hearing, and a motion to vacate the judgment and findings and render a judgment in favor of plaintiff and against defendants as prayed, and in favor of plaintiff and against defendant Mahoney for $50, an additional amount allegedly paid him by plaintiff.

By stipulation of counsel for all the parties, dated April 2, 1957, and filed in the district court for Boone County April 27, 1957, they agreed to the manner of submission of plaintiff's motions aforesaid to the trial court, and that the entry of an appropriate order thereon should be transmitted to the clerk of the district court for Boone County for filing and entry of record.

Thereafter, on August 24, 1957, the trial court sustained plaintiff's motions aforesaid and rendered a judgment which was filed in the district court for Boone County on August 26, 1957. Therein the court found that on or about September 24, 1954, Mahoney sold plaintiff the described farm tractor for an agreed sale price of $2,950, and plaintiff traded in his tractor as part-payment, receiving $1,180 credit therefor, thereby leaving a balance of $1,770 of the purchase price unpaid. That there was no time price noted or involved in said transaction, but Mahoney agreed to obtain a loan for the balance of the purchase price through defendant, and the tractor was delivered by Mahoney to plaintiff. That thereafter Mahoney procured a loan from defendant for said $1,770 balance due on the purchase price, and presented to plaintiff a note and chattel mortgage in the amount of $2,161.84, payable in two installments of $1,080.92, with one installment payable in 1 year and the other in 2 years from date. That said note and mortgage exceeded the $1,770 unpaid balance of the purchase price by $391.84, which reflected charges for making said loan, and exceeded the maximum legal rate of interest allowed to be charged thereon under sections 45-114 to 45-162, R. R. S. 1943, which applied to the transaction between plaintiff and defendants. (In that connection, sections 45-156 to 45-162, R. R. S. 1943, inclu-

sive, are not here directly involved.) That such install-ment loan violated said provisions, and rendered said transaction null and void from its beginning. That be-fore said note and mortgage were accepted by defendant, Mahoney informed plaintiff that defendant refused to make the loan unless plaintiff paid $50 more, whereupon plaintiff paid Mahoney such an additional sum to get the loan.

It was also found that at request of defendant, plain-tiff on designated dates had paid it certain sums for prin-cipal and interest payments on the loan, and there was due therefor from defendant to plaintiff the sum of $537.26, and that the note and mortgage should be can-celled. It further found that on or about October 1, 1954, plaintiff had paid Mahoney $50 which he demanded before the loan would be approved, and there was due plaintiff from Mahoney the sum of $50 with interest from October 1, 1954, a total of $58.50. Judgment was rendered in favor of plaintiff and against defendants respectively, in conformity with said findings aforesaid.

Thereafter, defendants each timely filed identical motions for rehearing and new trial, upon the grounds, insofar as important here: (1) That the trial court was without jurisdiction to render the judgment of August 24, 1957, and it was null and void because plaintiff's motions for rehearing and to vacate the judgment and render judgment for plaintiff, filed February 25, 1957, were not filed as required by section 25-1143, R. R. S. 1943, within 10 days after the trial court's findings and judgment had been rendered and filed in the district court for Boone County on January 21, 1957 (in such respect, defendants assumed that the "memorandum opinion" sent to counsel by the trial court and filed in the district court for Boone County by someone on Jan-uary 21, 1957, was a final judgment); (2) that the judgment of August 24, 1957, was contrary to and in vio-lation of L. B. 33, enacted by the Legislature in 1957, which was allegedly effective and controlling before

rendition of such judgment; (3) that the trial court erred by admitting in evidence, over objection, plaintiff's testimony that Mahoney told him he would procure a loan for plaintiff through the defendant; and (4) that the judgment of August 24, 1957, was not supported by the evidence but was contrary thereto and contrary to law.

Subsequently, on October 10, 1957, defendants' motions, and each of them, were overruled, "conditioned only that the plaintiff file a remittitur of the $50.00 paid by him to the defendant, Ray Mahoney, on or about October 1, 1954, together with the interest thereon, included in the decree now entered of record in the above entitled cause, said remittitur to be filed within ten days from date hereof." On that same date, plaintiff filed such a remittitur.

Thereupon, only defendant, Securities Acceptance Corporation, appealed, substantially assigning as error the grounds enumerated in its motions for rehearing and new trial heretofore set forth. In that connection, plaintiff cross-appealed, assigning that the trial court erred in denying plaintiff the right to recover from defendant the $50 paid to Mahoney, its alleged agent, and that judgment denying such relief was not sustained by the evidence but was contrary thereto and contrary to law. We do not sustain defendant's assignments, and we deny plaintiff's cross-appeal.

The first question presented is whether or not the "memorandum opinion," filed January 21, 1957, and heretofore referred to, was a final judgment which required plaintiff to file motions for rehearing and for judgment in favor of plaintiff and against defendants, within 10 days from January 21, 1957, in order to carry the matter over from the October 1956 term of court to the February 1957 term, thence to the May 1957 term, and give validity to the order and judgment of the trial court rendered at the subsequent term on August 24, 1957, in favor of plaintiff and against defendants.

In that connection, it is elementary that ordinarily a judgment is final for purposes of appeal when it determines the rights of the parties, and no further questions can arise before the court rendering it except such as are necessary to be determined in carrying it into effect. An examination of the "memorandum opinion" discloses clearly that it was not a final judgment rendered by the trial court. Its language and form simply indicated the trial court's view of some of the evidence, and discussed and distinguished cases upon which he intended to predicate his findings and conclusions in a judgment which he intended to subsequently render. It was in form and substance of no more force and effect than a letter written to counsel for the parties by the court, which one of them subsequently filed in the district court, such as that sent to them on July 25, 1957, which was filed by someone on November 7, 1957, long after the judgment of August 24, 1957, had been rendered. The stipulation entered into by all the parties on February 19, 1957, and filed February 25, 1957, clearly indicated that they all recognized that the "memorandum opinion" was not a final judgment but that the judgment dated February 23, 1957, which was approved by counsel for the parties as to form, and filed February 25, 1957, in conformity with the stipulation of the parties aforesaid, was in effect the final judgment. In other words, that judgment was favorable to defendant in material respects, and, evidently assuming that the "memorandum opinion" was not a final judgment, defendant sought to take advantage of the judgment dated February 23, 1957, and filed February 25, 1957, by not filing any motion for rehearing or new trial. However, on February 25, 1957, after such final judgment was rendered and filed, plaintiff did timely file motions for rehearing and to vacate that judgment and render judgment for plaintiff. Also, thereafter, defendants again twice stipulated with plaintiff, on April 2 and April 6, 1957, the manner of sub-

mitting such motions and agreeing that the entry of appropriate orders thereon should be transmitted to the clerk of the district court for Boone County for filing and entry of record in said court. Defendant's first assignment of error has no merit.

Defendant also assigned and argued that the order and judgment of August 24, 1957, in favor of plaintiff, was rendered after L. B. 33, Laws of Nebraska 1957, c. 194, p. 688, became effective, amending section 45-155, R. R. S. 1943, and repealing said original section and also section 45-154, R. R. S. 1943, which changed the civil penalty, therefore the voiding and cancellation of the note and mortgage, and rendition of a judgment against defendant for the amount of payments made on the note and mortgage by plaintiff, was clearly erroneous. We do not agree.

In that connection, as said in Restatement, Contracts, § 609, p. 1128: "A bargain that is illegal when formed does not become legal * * * (b) by reason of a change of law, except where the Legislature manifests an intention to validate the bargain." See, also, Comment a and illustration 2, p. 1129. We find no legislative manifestation of any intention to retrospectively validate illegal bargains or contractual transactions such as here involved.

Also, as said in 23 Am. Jur., Forfeitures and Penalties, § 41, p. 634: "While constitutional provisions against impairing the obligation of contracts do not apply to the withdrawal of a right to recover ordinary statutory penalties, even after the penalties have been incurred, a penalty imposed by law as a sanction for the enforcement or protection of a contract right may not be constitutionally withdrawn where to do so directly lessens or impairs the legal value of the contract itself, to which the penalty is attached." See, also, Powell v. Edwards, 162 Neb. 11, 75 N. W. 2d 122.

We are dealing in the case at bar with a contractual transaction. In that connection, section 45-138, R. R.

S. 1943, provided that any contract of loan made in violation of that section, either knowingly or without the exercise of due care to prevent the same, shall be void, and the licensee shall have no right to collect or receive any principal, interest, or charges on such loan. Such a provision is still included in said section as amended in 1953 and 1957. Section 45-155, R. R. S. 1943, also provided that violation of sections 45-114 to 45-155, R. R. S. 1943, in connection with any indebtedness, however acquired, shall render such indebtedness void and uncollectible. Defendant's second assignment has no merit.

. We have construed and applied the Installment Loan Act, sections 45-114 to 45-158, R. R. S. 1943, inclusive, in recent cases. In State ex rel. Beck v. Associates Discount Corp., 162 Neb. 683, 77 N. W. 2d 215, we held: "The permissive provisions of sections 45-114 to 45-158, R. R. S. 1943, apply to licensees, but every inhibitory provision contained therein applies alike to licensees and nonlicensees and the officers and employees of either or both, and the violation thereof by such persons in connection with any indebtedness, however acquired by them, renders such entire indebtedness void and uncollectible.

"Since usury is generally accompanied by device, subterfuge, scheme, and circumvention of one kind or another to present the color of legality, it is the duty of the court to examine the substance of the transaction as well as its form, and the right to relief will not be denied because parol proof of the usurious character of the transaction contradicts a written instrument.

"A dealer in automobiles may in good faith sell a car on time for a price in excess of the cash price without tainting the transaction with usury, though the difference in price may exceed lawful interest for a loan.

"In such cases, however, the transaction between the buyer and the seller must be a completed bona fide time price sale agreement, and the foregoing rule does not apply where it is proved that the transaction was

not made in good faith but was a device and subterfuge pursued to evade the operation against it of usury statutes.

"The usurious character of a transaction is determined as of the time of its inception, and if a contract is usurious in its inception, no subsequent transaction will cure it. Hence, when a usurious contract is renewed by the giving of a renewal or substituted contract, the usuary follows into and becomes a part of the latter contract, making it subject to the defense of usury to the same extent as was the original obligation. Further, any compensation paid or to be paid for any extension or forbearance of a loan may not exceed the permissible statutory maximum."

The opinion in such case also cited and quoted with approval from Powell v. Edwards, *supra*, wherein we discussed and distinguished Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429, relied upon by defendant herein, and the legal and factual distinction therein made has application in the case at bar.

As recently as McNish v. General Credit Corp., 164 Neb. 526, 83 N. W. 2d 1, citing and quoting with approval from Powell v. Edwards, *supra*, and State ex rel. Beck v. Associates Discount Corp., *supra*, we held: "Ordinarily courts of equity will refuse to aid in the enforcement of penalties and forfeitures and leave the parties to whatever remedies they may have at law. However, this is not an absolute or inflexible rule and should yield when good reason exists for doing so.

"A borrower coming under the statutes relating to installment loans is not regarded as being in pari delicto but rather as being in vinculus to the lender, to whom he therefore owes no duty in equity. Insofar as Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N. W. 429, is in conflict herewith, it is overruled.

"A truck dealer may in good faith sell a truck on time for a price in excess of the cash price without tainting the transaction with usury, even though the

difference in the two prices may exceed lawful interest for a loan.

"A time sale made in good faith at a price in excess of a cash price, which time price is arrived at by schedules furnished by a finance company which solicits contracts so entered into between a purchaser and a dealer, may not be regarded as being tainted with usury, even though the difference exceeds the lawful interest for a loan.

"In order to have the foregoing principles apply it must appear that the buyer actually was informed of and had the opportunity to choose between a time sale price and a cash sale price. It is not enough to merely show that the instruments signed evidencing the indebtedness refer to a time price or time differential when, in fact, the buyer was never quoted a time sale price as such."

In that opinion, we reversed the judgment which dismissed plaintiff's action with directions to render a judgment cancelling the note as null and void from its inception, and to render a judgment against defendant for the full amount of the payments made to it with interest at 6 percent on the amount of each of such payments, from the date it was made. The authorities heretofore cited are controlling here.

This action being one in equity, we will consider the record de novo, and, in so considering it, apply the usual principles applicable in such cases. In so doing, the record as summarized discloses the following: At the times involved, plaintiff was farming and operating a cream station in Monroe. Mahoney operated a farm implement business in St. Edward in the name of Mahoney Sales & Service. Defendant, with offices at Norfolk and Omaha, was licensed to make loans in Nebraska. It also purchased and discounted paper from dealers in automobiles and other commodities, which was a highly competitive business of great volume.

About the first week in September 1954, plaintiff pur-

chased a 1954 Massey-Harris 44 tractor, serial No. 31137, from Mahoney at his place of business in St. Edward. The purchase price therefor as fixed by Mahoney was $2,950, but plaintiff was allowed $1,180 as down payment, leaving $1,770 of the purchase price unpaid, for which Mahoney told plaintiff he would obtain a loan for him through defendant. In that connection, contrary to defendant's contention, such last evidence aforesaid, as adduced in its various forms, was properly admitted over objection, which disposes of defendant's third assignment.

Thereupon, plaintiff took the tractor to Monroe, where, on September 7, 1954, for an advance assessment of $31.25, for a term of 3 years, plaintiff insured it for $2,500 against all direct loss by fire, lightning, windstorm, cyclone, or tornado, except as thereinafter provided, with the Farmers Mutual Insurance Company of Nebraska.

Thereafter, plaintiff was notified by Mahoney that the papers in connection with his loan were ready, so plaintiff appeared at Mahoney's office in St. Edward, on September 24, 1954. In that connection, defendant furnished Mahoney with its own approved forms of purchaser's statements, promissory notes, and chattel mortgages, together with a rate chart showing, in connection with purported time sales, the amount Mahoney was required to add to the cash price in order to sell the paper to defendant and receive the full cash price. Thus, Mahoney made out the forms for defendant and received 1 percent reserve credit commission on every such transaction. The evidence generally is in conflict upon the question of whether Mahoney ever quoted plaintiff both a cash price and a time price as such for the tractor. However, Mahoney's testimony was equivocal with regard to what he said to plaintiff, and other evidence clearly indicates that plaintiff was never quoted a time price as such by Mahoney or defendant, although plaintiff assumed that interest on a loan

of $1,770 would make him owe a little more than that sum.

On September 24, 1954, plaintiff signed one of defendant's forms, entitled "Securities Acceptance Corporation Purchaser's Agreement" which still has numerous blank spaces upon it. Plaintiff testified that it was all blank when he signed it, but Mahoney testified that he wrote in the filled blanks with pencil in the presence and at the direction of plaintiff. Some relevant information contained therein reads: "Purchaser Bob Curtiss (sic) * * * Checking Acc't with Monroe Nat'l Bank" when there was no such bank, and "Near Relatives: * * * Richard Curtiss (sic), St. Edw. Son-in-law," when such person was in fact plaintiff's son, which indicates that such blanks were not filled in by Mahoney upon information furnished by plaintiff when he signed the instrument. Be that as it may, as said under "Statement of Transaction" after describing the tractor: "1. Bona Fide Cash Selling Price Including Taxes and Extra Equipment $2950.00 * * * (A) Cash Down Payment $1180.00 * * * 3. Unpaid Balance (Amount Due Dealer) $1770.00 (Item 1 less Item 2) 4. Time Differential (Including Insurance) $391.84 5. Total Amount of Note (Item 3 plus Item 4) $2161.84 Note Payable as Follows: 2 Payments of $1080.92 each * * * Payable on the 1st day of every 12 month; First Payment Due Oct 1, 1955 * * * I appoint any person designated by any holder of my mortgage to apply for health, accident or life insurance for me and assign all benefits thereunder to said mortgage holder * * *."

In that connection, the manager of defendant's Norfolk office testified that "Time differential," which he thought any ordinary farmer ought to understand without explanation, was made up of cost of money for the amount and time involved, cost of insurance plus business expense, hazards, credit investigation, collection, skips in payments, and liquidation of the paper. He testified that a reserve credit given to Mahoney in a sepa-

rate account on defendant's books, to wit, 1 percent of $1,770, or $17.70, was in fact earned only if the contract was finally carried out, because Mahoney assumed part of the hazard through his endorsement or repurchase obligations by agreement with defendant.

On September 24, 1954, plaintiff also signed a promissory note for $2,161.84, wherein Mahoney Sales & Service of St. Edward, Nebraska, was payee. Such note read in part: "* * * in Two payments of $1080.92 each * * * payable on the 1st day of every 12th month Ffirst (sic) due 10/1/55) month, after date hereof, until the above principal sum together with interest on any unpaid balance thereof at the highest lawful contract rate after maturity is paid, all payable at the office of the Securities Acceptance Corporation, Omaha, Nebraska." On the back of the note appeared the printed endorsement: "Endorsement No. 1 For value received pay to the order of Securities Acceptance Corporation Demand, presentment for payment, protest, notice of protest and non-payment waived; payment guaranteed; renewal or extension authorized without notice." Such endorsement was signed by "Mahoney Sales & Serv (Name of Dealer) by Ray Mahoney (Signature and Title)."

On September 24, 1954, plaintiff also signed a chattel mortgage on the tractor with Mahoney Sales & Service, as mortgagee, to secure payment of the note as provided therein. Such chattel mortgage was never acknowledged or recorded, but Mahoney signed it as a witness, and immediately assigned it to defendant. Among other things, plaintiff agreed in the chattel mortgage that the mortgagee was "authorized to purchase fire, theft and such other insurance in such forms and amounts as Mortgagee may require relating to the respective interests in the chattel of the Mortgagor and Mortgagee, and to execute applications for such insurance if and when required, and upon request of Mortgagee, the Mortgagor shall procure such insurance." Other provisions are not important here.

It is important to note that by check dated September 25, 1954, defendant paid Mahoney $1,770 and gave him credit in a separate account on its books for $17.70, or 1 percent thereof, which percentage was allowed Mahoney in all such transactions.

Also, in violation of section 45-140, R. R. S. 1943, no statement concerning insurance was ever given plaintiff, and the evidence will not sustain any conclusion that either Mahoney or defendant ever delivered or executed a copy of an insurance policy or certificate of insurance to plaintiff. As a matter of fact, he had previously purchased his own insurance. Also, in violation of section 45-141, R. R. S. 1943, defendant required the purchase of insurance by plaintiff, and charged him for same (the amount so charged is not disclosed), as a condition precedent to making the loan. Also, in violation of section 45-143, R. R. S. 1943, defendant took the purchaser's statement, signed by plaintiff, as an instrument with blanks left therein to be filled out after execution, and gave plaintiff no statement at the time the loan was made, as required by section 45-145, R. R. S. 1943.

Further, on September 29, 1955, after the first installment was due, plaintiff personally paid defendant $126 and received a receipt reading: "Collected on note $100.00 $26.60 Total $126.60." The $26.60 was not receipted for as interest, and defendant's manager at Norfolk admitted that it was not either interest or principal, but was demanded and received by defendant from plaintiff as payment for an extension of the balance of the first installment during October and November 1955, which installment during that period after maturity October 1, 1955, also went right on earning 9 percent interest in addition to the $26.60 paid by plaintiff, which were clearly usurious charges, in violation of section 45-138, R. R. S. 1943. Thereafter, on November 30, 1955, plaintiff paid defendant $350 on the principal of the first installment, which at that time

made $450 received on the principal thereof by defendant. Nevertheless, on January 23, 1956, plaintiff paid defendant $12.60 for an extension of the balance of the first installment to January 1, 1956. Admittedly, likewise, that payment was not interest or principal, but was demanded and received by defendant from plaintiff while the balance of the first installment during that period after maturity went right on earning 9 percent interest in addition to the $12.60 paid by plaintiff for 1 month's extension, which were clearly usurious charges in violation of section 45-138, R. R. S. 1943.

When those demands and charges were made, plaintiff complained to and inquired of Mahoney about the situation. Thereupon he was given a statement written in pencil by Mahoney, which, with reference to the tractor transaction, read: "9-24-54 Date Purchase Cost 2950-allowed 1180.00 for Equip 2 — Payments 1080.92 bal of original deal $1770.00." Mahoney's books and records admittedly showed $2,950 as the selling price, with down payment $1,180, leaving a balance of $1,770 unpaid, with neither a cash nor a time price mentioned therein as such. He admittedly figured the time differential from defendant's chart furnished by it, which represented $391.84 more than the $1,770 owing by plaintiff and paid to Mahoney by defendant.

The evidence with regard to the down payment of $1,180 is conflicting. Plaintiff testified, and his son corroborated it in some respects, that Mahoney gave him $1,180 for his old tractor as the down payment, and that he later paid Mahoney $50 in addition to make the down payment 40 percent of the purchase price of $2,950, which payment defendant demanded before it would make the loan. Plaintiff sought in his cross-appeal to recover that $50 from defendant upon the premise that Mahoney was defendant's agent and collected it for defendant. It will be noted that $1,180 was exactly 40 percent of $2,950, but $1,180 plus $50 was of course more than 40 percent of $2,950. In that

connection, also, the record discloses that defendant never received any such $50 payment, and it never appeared upon Mahoney's books and records except and unless it was a part of the $1,180 down payment. Also, Mahoney testified that he allowed plaintiff $1,130 for his old tractor, and plaintiff paid him $50 cash in order to make the down payment $1,180, or 40 percent of the purchase price of the tractor, which, under the circumstances, is more convincing. The trial court, in its judgment of August 24, 1957, rendered judgment against Mahoney for the $50 payment, together with interest of $8.50, but upon reconsideration required plaintiff to remit same as a condition for overruling the respective motions of defendants for rehearing or new trial, and Mahoney did not appeal. The court doubtless did so upon the theory that the $50 payment by plaintiff to Mahoney was a part of the $1,180 down payment. In any event, we decided de novo that it was a part of the down payment, and that plaintiff's cross-appeal has no merit.

The record discloses that on December 10, 1956, plaintiff had deposited with the clerk of the district court $1,000 as a bond for a restraining order then issued. The judgment of August 24, 1957, made the restraining order permanent, and ordered the clerk to refund said $1,000 to plaintiff unless defendant executed a supersedeas bond to protect plaintiff against loss of said $1,000 and interest upon final disposition of this cause. Defendant did execute such a supersedeas bond. In that situation, upon affirmance of the judgment, plaintiff would be entitled to recover back his $1,000 deposit with interest, which interest defendant should be required to pay at 6 percent from August 24, 1957.

For reasons heretofore stated, we conclude that the transaction here involved was not made in good faith, but was a device and subterfuge pursued by Mahoney and defendant to avoid the operation against them of the usury statutes, and that the note and chattel mort-

gage were usurious and in violation of the Installment Loan Act, which made the note and chattel mortgage entirely null and void from their inception. The judgment of the trial court should be and hereby is affirmed. All costs are taxed to defendant, Securities Acceptance Corporation.

· AFFIRMED.